THE PEOPLE OF THE STATE OF NEW YORK, Plaintiffs in Error, *v.* HENRY E. MARING, Defendant in Error.

The act of April 13, 1866, subjecting sales of foreign merchandise by brokers to taxation, does not contravene any of the sections of the Constitution of the State of New York, but is in conflict with provisions of the Constitution of the United States, in so far as it imposes a duty upon imports.

A State cannot impose a duty upon articles which have been imported for sale, until the importer has either sold them, or divided them into smaller quantities by breaking up the casks, packages, etc., so as to destroy the character of import which subjected them to duties under the laws of the United States.

After they have passed into the mass of general property, by being sold by the importer either for consumption or resale, they may be taxed in common with other property. Until such a sale is made, the articles retain their character as imports, if the packages in which they were imported remain unbroken.

Whatever may be the right of the State to impose a tax upon brokers, as engaged in an avocation within the State, the tax imposed by this act is not upon the avocation, but upon merchandise, whether such as has lost or such as still retains the character of an import; and the Constitution of the United States prohibits State taxation of the latter.

*George Bliss, Jr., A. Oakey Hall* and *John H. Martindale,* Attorney-General, for the plaintiffs in error.

*Waldo Hutchins* and *William M. Evarts,* for the defendant in error.

SCRUGHAM, J.   The questions presented by this appeal are as to the conformity of the act of April 13, 1866, entitled "An act to amend chapter sixty-two of the Laws of eighteen hundred and forty-six, and other acts additional to the same," with the Constitutions of this State and of the United States.

The objection that it does not comply with the provisions of section thirteen, article seven, of the Constitution of this State, is fully answered in the opinion of Judge HUNT, and it is only necessary to consider whether the act is in any respect repugnant to the Constitution of the United States.

By section eight of article one of the Constitution of the United States, it is, among other things, provided that congress shall have power to lay and collect duties, imposts, and excises, and to regulate commerce with foreign nations; and section ten of the same article provides, among other things, "that no State shall, without the consent of the congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for exercising its inspection laws; and the net produce of all duties and imposts laid by any State on imports or exports, shall be for the use of the treasury of the United States, and all such laws shall be subject to the revision and control of the congress."

The act under which the defendant in error was indicted, subjects "foreign wines and ardent spirits," and "all goods, wares, merchandise and effects imported from any place beyond the Cape of Good Hope," and "all other goods, wares, merchandise and effects, which are the production of any foreign country," offered for sale by sample or otherwise by brokers, every time they shall be sold, to duties, which are specified in the act, and are payable into the treasury of the State for its use.

It thus, by its very terms, lays duties upon imported articles, and in no manner discriminates between such as retain, and such as have lost, their character as imports; and, as it affects sales of the former, it is to that extent in conflict with the provisions of the Constitution of the United States.

There can be no doubt of the power of a State to tax articles which have been imported for sale, after they have passed into the mass of general property, by being sold by the importer either for consumption or resale, or by being divided by him into smaller quantities by the breaking up of the casks or packages in which they were imported, so as to destroy the character of import which subjected them to duties under the laws of the United States; but until the importer has so, by sale or otherwise, acted upon the articles as to cause them to lose their character of imports, a State tax upon them would be in direct violation of the constitu-

tional prohibition; and a tax upon their sale, if it were possible to regard it otherwise than as a tax upon the article itself, would be in derogation of the right to sell, which is an inseparable incident of the law permitting importation, and which the importer acquired by the payment of duties to the United States.

Such a power in a State is incompatible with the power of congress to regulate commerce, for it could be used to destroy it, by subjecting sales of imported articles to so high a tax as absolutely to prevent them.

The case of *Brown* v. *The State of Maryland* (12 Wheaton, 419), was one involving the constitutionality of an act of the legislature of Maryland, requiring importers and other persons selling certain imported foreign merchandise by wholesale, by the bale or package, to take out a license, and pay a fee of fifty dollars therefor.

The right of a State to impose duties upon imports and the sales of imported merchandise, was there fully considered, and is discussed with great ability in the opinion of the court, which embodies an unanswerable argument against State taxation of imported merchandise, or sales of such merchandise, until after it has lost its character of an import.

It is said, in the course of the opinion, that "auctioneers are persons licensed by the State, and if the importer chooses to employ them, he can as little object to paying for this service as for any other for which he may apply to an officer of the State."

The right of sale may very well be annexed to importation, without annexing to it also the privilege of using the officers licensed by the State to make a sale in a peculiar way.

It is not claimed that brokers are in any respect officers of the State of New York, and therefore this consideration as to sales by State officers, such as the auctioneers to whom allusion is made, is inapplicable to the question before us.

In *Nathan* v. *Louisiana* (8 How. 73), it was held that a State tax upon brokers in bills of exchange, was not repugnant to the Constitution of the United States, because it was a tax which the State had an undoubted right to impose on a

citizen for the prosecution of a particular avocation within its jurisdiction; and because foreign bills of exchange are neither exports nor imports. Though such bills are instruments of commerce, they are no more so than products of agriculture or manufactures, over which the taxing power of the State extends, until they are separated from the general mass of property by becoming exports.

The distinction between that case and this is therefore very apparent, for the act then upheld did not subject exports or imports to State taxation, but only imposed a duty upon the prosecution of a particular business within the State, while the act now under consideration subjects imports to State taxation, and cannot be construed as merely imposing a tax upon brokers in respect to their avocation. The act assumes to impose duties on the imports sold, and not on the brokers by whom the sales are made.

The judgment should be affirmed.

DAVIES, Ch. J., WRIGHT, PORTER and GROVER, JJ., concurring,

Judgment affirmed.