## WARD v. MARYLAND.

A statute of Maryland required all traders resident within the State to take out licenses and to pay therefor certain sums regulated by a sliding scale of from $12 to $150, according as their stock in trade might vary from $1000 to more than $40,000. The statute also made it a penal offence in any person not being a permanent resident in the State to sell, offer for sale, or expose for sale, within certain limits in the State, any goods, wares, or merchandise whatever, other than agricultural products and articles manufactured in Maryland, within the said limits, either by card, sample, or other specimen, or by written or printed trade-list or catalogue, whether such person be the maker or manufacturer thereof or not, without first obtaining a license so to do, for which license (to be renewed annually) a sum of $300 was to be paid. *Held*, That the statute imposed a discriminating tax upon non-resident traders trading in the limits mentioned, and that it was *pro tanto* repugnant to the Federal Constitution and void.

ERROR to the Court of Appeals of the State of Maryland; the case being this:

The Constitution of the United States, in one place, thus ordains:

"ARTICLE IV. Sec. 2. The citizens of each State shall be entitled to all privileges and immunities of citizens in the several States."

Also thus, in another:

"ARTICLE I. Sec. 8. The Congress shall have power to regulate commerce among the several States."

With these provisions in force, as fundamental law, the State of Maryland passed two general laws regulating the subject of traders.* One part of the enactment regulated traders resident within the State, and another sought to reg-

* Code of Public Law, article 56, title "License."

ulate traders not so resident, but seeking to do business there, and both parts required the party trading or seeking to trade to take out and pay for a license.

These were the sections relating to

## TRADERS RESIDENT OF MARYLAND.

§ 41. No person within this State other than the grower, maker, or manufacturer, shall barter or sell any goods, chattels, wares, or merchandise, without first obtaining a license in the manner herein prescribed.

§ 42. When any person, body politic or corporate, shall propose to sell or barter anything mentioned in the preceding section except spirituous or fermented liquors, he shall apply to the clerk of the Circuit Court of the county in which he may reside for a license therefor.

§ 43. Upon such application, the applicant shall state to the clerk, on oath, the amount of his stock of goods, generally kept on hand by him, or the concern in which he is engaged, at the principal season of sale.

§ 44. If the amount of the applicant's stock in trade does not or will not exceed $1000, the sum of $12 shall be demanded and received by said clerk from said applicant before granting the license.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| § 45. | If more than | $1,000 | and not more than | $15,000, | the sum of | $15. |
| § 46. | " " | 1,500 | " " | 2,500, | " | 18. |
| § 47. | " " | 2,500 | " " | 4,000, | " | 22. |
| § 48. | " " | 4,000 | " " | 6,000, | " | 30. |
| § 49. | " " | 6,000 | " " | 8,000, | " | 40. |
| § 50. | " " | 8,000 | " " | 10,000, | " | 50. |
| § 51. | " " | 10,000 | " " | 15,000, | " | 65. |
| § 52. | " " | 15,000 | " " | 20,000, | " | 80. |
| § 53. | " " | 20,000 | " " | 30,000, | " | 100. |
| § 54. | " " | 30,000 | " " | 40,000, | " | 125. |
| § 55. | " " | 40,000 or over | | 40,000, | " | 150. |

These were the sections relating to

## TRADERS NOT RESIDENT OF MARYLAND.

§ 37. No person, not being a permanent resident in this State, shall sell, offer for sale, or expose for sale, within the limits of the city of Baltimore, any goods, wares, or merchan-

dise whatever, other than agricultural products and articles
manufactured in the State of Maryland, within the limits of the
said city, either by card, sample, or other specimen, or by writ-
ten or printed trade-list or catalogue, whether such person be
the maker or manufacturer thereof or not, without first obtain-
ing a license so to do.

§ 38. Such license shall be issued to the person or copartner-
ship applying for the same on the payment of $300, and shall
run one year from date.

§ 39. No person, whether a resident or not of the city of
Baltimore, and licensed to sell therein, shall suffer or permit
any person not a permanent resident of the State of Maryland,
or the agent or representative of any person or persons not
residents of the State of Maryland, and not in his regular em-
ploy or service, to sell any goods, wares, or merchandise by
sample, card, or other specimen, or by written or printed trade-
list under his name or the name of his firm or partnership, or at
the store, counting-room, or warehouse in his occupation or used
as his place of business.

§ 40. Any person offending against either of the three last
preceding sections, shall be liable to indictment, and upon con-
viction shall be fined not less than $400 for each offence.

The reader will thus observe that the highest price which
any trader resident within the State was ever called on to
pay, in order to trade there, was $150, while every trader
not so resident, who sought to trade within the State, was
charged twice that sum.

In this state of constitutional and of statutory law, one
Ward, a citizen of the United States and of New Jersey,
resident in New Jersey, sold by sample, horse harness, within
the limits of Baltimore, without any license and contrary to
the above-quoted statute of Maryland. He was accordingly,
for the purpose of having the validity of the Maryland act
judicially tested, indicted in the Criminal Court of Balti-
more, the facts being agreed on. The indictment contained
two counts, one for selling and the other for offering to sell
by sample goods (to wit, horse harness) other than agricul-
tural products and articles manufactured in Maryland. The
defence was that the statute of Maryland was unconstitu-

tional and void, the two clauses of the Constitution already quoted being relied on as those to which the Maryland statute was repugnant. The Criminal Court adjudged the statute valid and fined Ward $400. This judgment being affirmed in the Court of Appeals of Maryland the case was now here for review.

*Mr. W. M. Evarts, for the plaintiff in error:*

I. The regulation attempted by State authority is flatly repugnant to the clause of the Constitution which declares that " the citizens of each State shall be entitled to all privileges and immunities of citizens of the several States." It is a direct discrimination between citizens of Maryland and citizens of other States in respect of an ordinary and extensive branch of mercantile dealing.

1. It makes that which is lawful within the State of Maryland for all persons resident therein, unlawful for citizens of other States, unless upon onerous conditions, not imposed upon its own citizens, or persons resident within it.

2. It punishes the refusal to submit to their conditions by indictment and fine.

3. It makes the discrimination rest upon the very fact which alone determines, in the case of citizens of the United States, whether a person is or is not a citizen of one State or another, to wit, *permanent residence in a State.*

II. The provisions of the act, in their application to the case of the defendant below, are " a regulation of commerce between the States," and of that nature to be on their face repugnant to that power, as intrusted to Congress by the Constitution.

It is indeed the doctrine of this court that this clause of the Constitution does not exclude *all* occupation by State legislation of the ground covered by it, in the absence of legislation by Congress within the premises of the State legislation.* But such a regulation by a State as is here

---

* Gilman *v.* Philadelphia, 3 Wallace, 713; Crandall *v.* State of Nevada, 6 Id. 42.

attempted,—a regulation by a State of the manner in which trading within it may be carried on by citizens of other States, and in respect of merchandise to be introduced from other States,—touches the main affirmative power of regulation of ordinary active commerce between the States. The deposit of the power with the general government is inconsistent with any *such* authority in a State, and the absence of legislation by Congress is equivalent to a declaration that this direct and active trade in commodities between the States shall remain free from all regulation.

The recent cases in this court seem to assume that if the subject of State taxation and regulation, presented therein, had been of *commerce*, the legislation complained of would have been beyond the authority of the State.[*]

*Mr. I. D. Jones, Attorney-General of the State of Maryland, contra:*

I. The statute does not violate that provision of the Constitution which declares that " the citizens of each State shall be entitled to all privileges and immunities of citizens of the several States."

There is nothing in the law which prohibits or restrains non-resident merchants, manufacturers, or traders or their agents, from bringing their goods here and selling them in the same mode, and under the same license, as residents of the State. A custom, however, has grown up with manufacturers in the large manufacturing cities and States, of sending agents through other States and cities with samples, or lists of their goods, and selling by retail or wholesale large quantities of merchandise. It is thus sold free from the local taxation, which affects like goods in the hands of resident traders. Such sales by runners are of course a great detriment to the trade of resident traders, who take out licenses, pay rent, and are subjected to local taxes. The tax is, therefore, a tax upon a particular business or trade, carried on in a particular mode within the limits of the State

---

[*] Paul *v.* Virginia, 8 Wallace, 168; Liverpool Ins. Co. *v.* Massachusetts, 10 Id. 567; Ducat *v.* Chicago, Id. 410.

by a particular class of persons, and not a tax upon goods or merchandise imported into the State either from foreign countries or from other States. The doctrine contended for by the plaintiff in error would give the non-resident commercial traveller, or " runner," superior advantages over the regular trader.

II. The law is not in conflict with any act of Congress regulating " commerce among the several States." The power. has been considered and treated as a concurrent power, to a certain extent, ever since the adoption of the Constitution of the United States; and like the concurrent powers of taxation and bankruptcy, the States may exercise it in cases where Congress has left it " in its dormant state."\* There being no regulation of Congress upon the same subject, the statute is not void as a regulation of commerce.

III. The law is, in short, a part of the license system of Maryland. Licenses are a mode of taxation upon certain business and occupations carried on within the State, whereby it raises revenue to support its government; it is a law to regulate contracts in a particular mode of traffic within its own territory, passed in the exercise of the State's right to regulate all persons, property, occupations, contracts, and transactions, within its own limits, in matters not prohibited to the State by the Constitution of the United States, or not subject to regulation by Congress, or in cases of concurrent powers, not regulated by act of Congress made in pursuance of the Constitution, and with which the State law is in conflict.

Mr. Justice CLIFFORD delivered the opinion of the court.

Power to re-examine final judgments of the State courts rendered in criminal prosecutions, as well as those rendered in civil suits, is conferred upon the Supreme Court when it appears that the judgment was rendered in the highest court of law in which a decision in the case could be had, and

---

\* Willson *v.* The Blackbird Creek Marsh Co., 2 Peters, 245; Cooley *v.* The Board of Wardens; 12 Howard, 299; Crandall *v.* Nevada, 6 Wallace, 85

that there was drawn in question the validity of a statute of a State, on the ground of its being repugnant to the Constitution of the United States, and that the decision of the State court was in favor of the validity of the statute.*

Persons not permanent residents in the State are prohibited by the laws of Maryland from selling, offering for sale, or exposing for sale, within a certain district of the State, any goods whatever, other than agricultural products and articles manufactured in the State, either by card, sample, or other specimen, or by written or printed trade-list or catalogue, whether such person be the maker or manufacturer or not, without first obtaining a license so to do. Licenses may be granted by the proper authorities of the State for that purpose, on the payment of three hundred dollars, " to run one year from date."

Both residents and non-residents of that district are also forbidden to suffer or permit any person, not a permanent resident of the State, and not in their regular employment or service, to sell any goods in that way under their name or the name of their firm, or at their store, warehouse, or place of business.

Offenders against either of those prohibitions are made liable to indictment, and, upon conviction, may be fined not less than four hundred nor more than six hundred dollars for each offence.†

Ward, the defendant, is a citizen of New Jersey, and not a permanent resident of Maryland, and the record shows that he, on the day therein named, at a place within the prohibited district, sold to the persons therein named, "by specimen, to wit, by sample," certain goods other than agricultural products or articles manufactured in the State, without first obtaining a license so to do, and that he was indicted for those acts in the proper criminal court, and was arraigned therein and pleaded not guilty to the indictment. Apart from the plea of not guilty is the further statement

---

* 1 Stat. at Large, 85.          † Sessions Acts, 1868, p. 786.

in the record, that the defendant " puts himself upon the
judgment of the court here, according to the act of Assembly
in such cases made and provided," and that the attorney for
the State doth the like.

All matters of fact having been agreed, the parties sub-
mitted the case to the court, to the end that the judgment
of the court might be obtained, whether the statute of the
State was or was not constitutional and valid. Judgment
was rendered for the State, and the criminal court sentenced
the defendant to pay a fine of four hundred dollars, and
costs, and the court below, upon appeal, affirmed the judg-
ment.

Adjudged constitutional, as the State law was by that de-
cision, the defendant, as he had a right to do, sued out a
writ of error, and removed the record into this court for
re-examination.

Congress possesses the power to regulate commerce among
the several States as well as commerce with foreign nations,
and the Constitution also provides that the citizens of each
State shall be entitled to all privileges and immunities of
citizens in the several States, and the defendant contends
that the statute of the State under consideration, in its prac-
tical operation, is repugnant to both of those provisions of
the Constitution, as it either works a complete prohibition
of all commerce from the other States in goods to be sold
by sample within the limits of the described district, or at
least creates an unjust and onerous discrimination in favor
of the citizens of the State enacting the statute, in respect
to an extensive and otherwise lucrative branch of interstate
commerce, by securing to the citizens of that State, if not
the exclusive control of the market, very important special
privileges and immunities by exemption from burdensome
requirements, and onerous exactions imposed upon the citi-
zens of the other States desirous of engaging in the same
mercantile pursuits in that district.

Attempt is made, in argument, to show in behalf of the
State, that the statute in question does not make any such

discrimination against the citizens of the other States, as is
supposed by the defendant; that the citizens of the State are
in fact subjected to substantially the same requirements and
exactions as are imposed upon the citizens of other States,
but it is too clear for argument, in a judicial opinion, that
the articles of the code referred to as establishing that theory
do not support the proposition, nor do they give it any coun-
tenance whatever.  Those enactments forbid resident traders,
other than the grower, maker, or manufacturer, to barter or
sell any goods or chattels without first obtaining a license in
the manner therein prescribed, and they also point out the
steps to be taken by the applicant to obtain it, and what he
must state in his application for that purpose.

Small traders, whose stock generally kept on hand at the
principal season of sale does not exceed one thousand dol-
lars, and are not engaged in selling spirituous or fermented
liquors, are required to pay for the license the sum of twelve
dollars.  If more than one thousand dollars, and not more
than fifteen hundred dollars, they are required to pay the
sum of fifteen dollars, and so on through ten other grada-
tions, the last of which requires the applicant to pay the sum
of one hundred and fifty dollars, where his stock generally
kept on hand at the principal season of sale exceeds forty
thousand dollars, which is the largest exaction made of any
resident trader, not engaged in the sale of spirituous or fer-
mented liquors.  Compare one set of the regulations with
the other, and comment is unnecessary, as the comparison
shows to a demonstration that the statute in question does
discriminate in favor of the citizens of the State, and that
the opposite theory finds no support from the articles of the
code which forbid resident traders from bartering or selling
goods or chattels without first obtaining a license for that
purpose, as therein prescribed.

State power to lay and collect taxes may reach every sub-
ject over which the unrestricted power of the State extends,
but the States cannot, without the consent of Congress, lay
any imposts or duties on imports or exports except what
may be absolutely necessary for executing their inspection

laws; nor can they, without the consent of Congress, lay any duty of tonnage, as they are expressly prohibited from so doing by the Constitution.

Implied prohibitions restricting the power of the States to lay and collect taxes also exist, which are as effectual to that end as those which are express. Undoubtedly the States may tax every subject of value, within the sovereignty of the State, belonging to the citizens as mere private property, but the power of taxation does not extend to the instruments of the Federal government, nor to the constitutional means employed by Congress to carry into execution the powers conferred in the Federal Constitution.*

Power to tax for State purposes is as much an exclusive power in the States as the power to lay and collect taxes to pay the debts and provide for the common defence and general welfare of the United States is an exclusive power in Congress. Both are subject, however, to certain prohibitions and restrictions, but in all other respects they are supreme powers possessed by each government entirely independent of the other. Congress may lay and collect taxes, duties, imposts, and excises, to pay the debts and provide for the common defence and general welfare, but direct taxation must be apportioned among the several States according to their respective numbers, and all duties, imposts, and excises must be uniform.

Articles exported from any State cannot be subjected to any tax or duty, nor is it competent for Congress to tax the salaries of the judges of the State courts, as the exercise of such a power is repugnant to the admitted right of the States to create courts, appoint judges, and provide for their compensation. Subject to those prohibitions and restrictions, and others of a like character, the power of Congress to lay and collect taxes, duties, imposts, and excises, to pay the debts and provide for the common defence and general welfare, is without limitation, but the powers granted to Congress are not in every case exclusive of similar powers

---

* McCulloch v. Maryland, 4 Wheaton, 424.

existing in the States, unless where the Constitution has so provided, or where the nature of the power granted, or the terms in which the grant is made, are of character to show that State legislation upon the subject would be repugnant to the Federal grant, or that the framers of the Constitution intended that the power should be exclusively exercised by Congress.

Outside of the prohibitions, express and implied, contained in the Federal Constitution, the power of the States to tax for the support of their own governments is coextensive with the subjects within their unrestricted sovereign power, which shows conclusively that the power to tax may be exercised at the same time and upon the same subjects of private property by the United States and by the States without inconsistency or repugnancy. Such a power exists in the United States by virtue of an express grant for the purpose; among other things, of paying the debts and providing for the common defence and general welfare; and it exists in the States for the support of their own governments, because they possessed the power without restriction before the Federal Constitution was adopted, and still retain it, except so far as the right is prohibited or restricted by that instrument.*

Possessing, as the States do, the power to tax for the support of their own governments, it follows that they may enact reasonable regulations to provide for the collection of the taxes levied for that purpose, not inconsistent with the power of Congress to regulate commerce, nor repugnant to the laws passed by Congress upon the same subject. Reasonable regulations for the collection of such taxes may be passed by the States, whether the property taxed belongs to residents or non-residents; and, in the absence of any Congressional legislation upon the same subject, no doubt is entertained that such regulations, if not in any way discriminating against the citizens of other States, may be upheld as valid; but very grave doubts are entertained whether the

---

* Gibbons *v.* Ogden, 9 Wheaton, 199; Nathan *v.* Louisiana, 8 Howard, 82.

statute in question does not embrace elements of regulation not warranted by the Constitution, even if it be admitted that the subject is left wholly untouched by any act of Congress.

Excise-taxes levied by a State upon commodities not produced to any considerable extent by the citizens of the State may, perhaps, be so excessive and unjust in respect to the citizens of the other States as to violate that provision of the Constitution, even though Congress has not legislated upon that precise subject; but it is not necessary to decide any of those questions in the case before the court, as the court is unhesitatingly of the opinion that the statute in question is repugnant to the second section of the fourth article of the Constitution, which provides that the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States.*

Taxes, it is conceded in those cases, may be imposed by a State on all sales made within the State, whether the goods sold were the produce of the State imposing the tax, or of some other State, provided the tax imposed is uniform; but the court at the same time decides in both cases that a tax discriminating against the commodities of the citizens of the other States of the Union would be inconsistent with the provisions of the Federal Constitution, and that the law imposing such a tax would be unconstitutional and invalid. Such an exaction, called by what name it may be, is a tax upon the goods or commodities sold, as the seller must add to the price to compensate for the sum charged for the license, which must be paid by the consumer or by the seller himself; and in either event the amount charged is equivalent to a direct tax upon the goods or commodities.†

Imposed as the exaction is upon persons not permanent residents in the State, it is not possible to deny that the tax is discriminating with any hope that the proposition could be sustained by the court. Few cases have arisen in which

---

* Woodruff v. Parham, 8 Wallace, 139; Hinson v. Lott, 8 Ib. 151.

† Brown v. Maryland, 12 Wheaton, 444; People v. Maring, 3 Keyes, 374.

this court has found it necessary to apply the guaranty ordained in the clause of the Constitution under consideration.*

Attempt will not be made to define the words "privileges and immunities," or to specify the rights which they are intended to secure and protect, beyond what may be necessary to the decision of the case before the court. Beyond doubt those words are words of very comprehensive meaning, but it will be sufficient to say that the clause plainly and unmistakably secures and protects the right of a citizen of one State to pass into any other State of the Union for the purpose of engaging in lawful commerce, trade, or business without molestation; to acquire personal property; to take and hold real estate; to maintain actions in the courts of the State; and to be exempt from any higher taxes or excises than are imposed by the State upon its own citizens.†

Comprehensive as the power of the States is to lay and collect taxes and excises, it is nevertheless clear, in the judgment of the court, that the power cannot be exercised to any extent in a manner forbidden by the Constitution; and inasmuch as the Constitution provides that the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States, it follows that the defendant might lawfully sell, or offer or expose for sale, within the district described in the indictment, any goods which the permanent residents of the State might sell, or offer or expose for sale in that district, without being subjected to any higher tax or excise than that exacted by law of such permanent residents.‡

Grant that the States may impose discriminating taxes against the citizens of other States, and it will soon be found that the power conferred upon Congress to regulate interstate commerce is of no value, as the unrestricted power of

---

* Conner *v.* Elliott, 18 Howard, 593.

† Cooley on Constitutional Limits, 16; Brown *v.* Maryland, 12 Wheaton, 449.

‡ State *v.* North et al., 27 Missouri, 467; Fire Department *v.* Wright, 8 E. D. Smith, 478; Paul *v.* Virginia, 8 Wallace, 177.

the States to tax will prove to be more efficacious to promote inequality than any regulations which Congress can pass to preserve the equality of right contemplated by the Constitution among the citizens of the several States. Excise taxes, it is everywhere conceded, may be imposed by the States, if not in any sense discriminating; but it should not be forgotten that the people of the several States live under one common Constitution, which was ordained to establish justice, and which, with the laws of Congress, and the treaties made by the proper authority, is the supreme law of the land; and that that supreme law requires equality of burden, and forbids discrimination in State taxation when the power is applied to the citizens of the other States. Inequality of burden, as well as the want of uniformity in commercial regulations, was one of the grievances of the citizens under the Confederation; and the new Constitution was adopted, among other things, to remedy those defects in the prior system.

Evidence to show that the framers of the Constitution intended to remove those great evils in the government is found in every one of the sections of the Constitution already referred to, and also in the clause which provides that no preference shall be given by any regulation of commerce or revenue to the ports of one State over those of another, showing that Congress, as well as the States, is forbidden to make any discrimination in enacting commercial or revenue regulations. Strong support to the same view is also derived from the succeeding clause in the same section of the Constitution, which provides that vessels bound to or from a State shall not be obliged to enter, clear, or pay duties in another.

Important as these provisions have been supposed to be, still it is clear that they would become comparatively valueless if it should be held that each State possesses the power in levying taxes for the support of its own government to discriminate against the citizens of every other State of the Union.

Much consideration was given to those clauses of the Con-

stitution in the *Passenger Cases*,* and they were there regarded as limitations upon the power of Congress to regulate commerce, and as intended to secure entire commercial equality, and also as prohibitions upon the States to destroy such equality by any legislation prescribing any conditions upon which vessels bound from one State to another shall be permitted to enter the ports of another State. Congress, said Mr. Justice Grier, has regulated commerce by willing that it shall be free, and it is therefore not left to the discretion of each State either to refuse a right of passage through her territory or to exact a duty for permission to exercise such a privilege.

Viewed in any light the court is of the opinion that the statute in question imposes a discriminating tax upon all persons trading in the manner described in the district mentioned in the indictment, who are not permanent residents in the State, and that the statute is repugnant to the Federal Constitution, and invalid for that reason.

Mr. Justice BRADLEY:

I concur in the opinion of the court, that the act of the legislature of Maryland, complained of in this case, discriminates in favor of residents and against non-residents of the State, and consequently is in violation of the fourth article of the Constitution of the United States, and therefore, *pro tanto*, void. But I am further of opinion that the act is in violation of the commercial clause of the Constitution, which confers upon Congress the power to regulate commerce among the several States; and it would be so, although it imposed upon residents the same burden for selling goods by sample as is imposed on non-residents. Such a law would effectually prevent the manufactures of the manufacturing States from selling their goods in other States unless they established commercial houses therein, or sold to resident merchants who chose to send them orders. It is, in fact, a

* 7 Howard, 400 to 414.

duty upon importation from one State to another, under the name of a tax. · I therefore dissent from any expression in the opinion of the court which, in any way, implies that such a burden, whether in the shape of a tax or a penalty, if made equally upon residents and non-residents, would be constitutional.

JUDGMENT REVERSED, and the cause remanded with directions to the court below to conform its judgment

TO THE OPINION OF THIS COURT.