### STATE *v.* LANCASTER.

A state statute requiring citizens of other states to procure a license to sell trees, shrubs, or vines, that may be sold by its own citizens unlicensed, is in conflict with art. 4, *s.* 2, of the constitution of the United States.

Information filed by the attorney-general, alleging that the respondent, on the 22d day of May, 1883, at Goffstown, not being licensed to sell trees, shrubs, and vines not grown in the state of New Hampshire, did unlawfully sell certain trees and vines, to wit, &c., not grown in said state, and not grown one year or more in lands or nurseries owned by him in said state on which taxes had been paid, to one Andrew J. Hazen, contrary to the form of the statute, &c. This information is filed under *c.* 44 of the Laws of 1879, and *c.* 72 of the Laws of 1881. The respondent moved to quash the information on the ground that said acts are in violation of *s.* 2, art. 4 of the Constitution of the United States. The court *pro forma* denied the motion, and the defendant excepted.

*Bainbridge Wadleigh,* for the defendant. The statutes under which the defendant is prosecuted allow the unrestricted sale of trees, shrubs, and vines, grown in the state of New Hampshire, but require a license for the sale of all grown elsewhere, unless they shall have been grown one year in lands or nurseries in said state owned by the party making such sale.

Such legislation is clearly in violation of the constitution of the United States. It proceeds upon the theory that the several states of this Union are, as to each other, foreign nations in relation to inter-state commerce. Under that theory all the other states can destroy our manufactures by compelling those who carry them on to find their only markets at home. Such legislation has been passed upon by the supreme court of the United States in *Welton* v. *State of Missouri,* 91 U. S. 275, and in *Guy* v. *Baltimore,* 100 U. S. 434, and held to be unconstitutional;—see, also, *Hinson* v. *Lott,* 8 Wall. 148; *Ward* v. *Maryland,* 12 Wall. 418.

*Mason W. Tappan, Attorney-General,* for the state. It is well known that the citizens of this state, prior to the passage of these

statutes, have been seriously imposed upon by people who have brought from other states, and induced them to purchase, trees, shrubs, seeds, and the like, which, when delivered, were found to be worthless. They are generally sent by express, and must be paid for before delivery, and yet, when tested, are found to be valueless by reason of having been removed for a long time from the soil, or because they have not been acclimated, or because they are not true to the name they purport to bear.

Can it be said that the state has not power to protect her citizens against impositions of this kind, just as much, for instance, as she had to pass wholesome laws regulating or prohibiting the sale of intoxicating liquors? Is it anything more than the exercise of the right to pass a wholesome police regulation, thereby protecting the citizen in his property, and against swindling and immoral practices, whether by persons living in this or other states? The state has undoubted power to enact such laws as shall secure the general comfort, health, and prosperity of its citizens; and to accomplish this, " persons and property are subjected to all kinds of restraints and burdens." *Thorpe* v. *Rutland & Burlington R. R.*, 27 Vt. 149. This is a power remaining in the people of the states, over which the national government has no control. *United States* v. *De Witt*, 9 Wall. 41.

If the statutes in question provided that a license should be required for all trees, shrubs, etc., whether grown in this or any other state, there could be no question as to their constitutionality until such time as congress should regulate traffic in such commodities between the various states; or, as was stated in *Welton* v. *Missouri*, 91 U. S. 280, "So far as some of these instruments are concerned, and some subjects which are local in their operation, it has been held that the states may provide regulation until congress acts with reference to them." Also, see *City of New York* v. *Miln*, 11 Pet. 375; Sto. Const., *s.* 1073: *Hinson* v. *Lott*, 8 Wall. 151; *Woodruff* v. *Parham*, 8 Wall. 136, 137.

It should be borne in mind, that in all the cases cited by the defendant, except one, the licenses are imposed upon all classes of goods, no matter whether they were necessaries of life or articles of luxury. The legislation complained of reached all sorts of commodities which might be the subject-matter of sale. In these cases the manifest intention of the enactments was to raise a revenue, and the decisions of the court went upon the ground that the tax, as a tax, was burdensome, and therefore placed one state at a greater disadvantage than another. In the first case cited in the defendant's brief, although the commodity taxed was intoxicating liquor, yet the principle decided is the same, for the statute was manifestly intended for the purpose of raising a revenue, and not for the restraint of a nuisance. In none of them were the enactments complained of in any sense an exercise of the police power. In the statutes at bar the object sought to be accomplished is different.

1. They were not passed for the purpose of raising revenue, as is manifest from the fact that it is all to be expended by the board of agriculture, or under its direction, in testing seeds, trees, shrubs, &c., and ascertaining whether or not they are genuine.

2. It is apparent that it was intended to prevent the sale of worthless articles of the various kinds enumerated, and to prevent our citizens from being imposed upon, for the reason that the license of any person selling worthless articles, or imposing upon our citizens, is to be revoked, and a penalty is incurred.

. The statutes in question, then, are only the reasonable exercise of the police power, which is securely vested in the several states for the reasonable protection of the citizens. Sto. Const., *s.* 1954; Cool. Const. Lim. 573.

This right of power has been exercised in the same way, and to the same effect, and for the same purpose, in restraining the sale of intoxicating liquors. The same objections have been made in various states to their constitutionality as are now made to the statutes at bar, and yet their constitutionality has always been maintained as a wholesome exercise of the police power, in restraining immoral practices, nuisances, impositions, etc. See *License Cases,* 5 How. 504.

The legislature of this state, in the exercise of this police power, have passed several other enactments for the protection of their citizens, notably among which may be found the regulations imposed upon the sale of lightning-rods, petroleum, illuminating oils, fertilizers, etc. To hold the laws in question unconstitutional would be to sweep these important statutes from the statute-book. Once begin, where shall we stop?

It was manifestly not the intention of the legislature to interfere with, or in any way restrain, by these statutes, commerce between the citizens of any other state and the citizens of our own state; but simply so to regulate the quality and character of the commodities named in said chapter forty-four, offered for sale in this state, as to protect our own citizens from being imposed upon by irresponsible parties, whether resident of this state or of some foreign jurisdiction. The statute does not discriminate with reference to the person selling or acting as agent: the field is alike open to all. It only discriminates as to the character of the trees, shrubs, and vines offered for sale. It is only the exercise of a wholesome regulation for the protection of the citizens against impositions, evil practices, false representations, and nuisances.

It is said that this act is in violation of the clause in the constitution which provides that "the citizens of each state shall be entitled to all the immunities and privileges of citizens of the several states." This clause of the constitution does not give a citizen of another state the right to perpetrate a fraud in this state, in the selling of old, dried up, and worthless trees, nor does it preclude the state from exercising its power of police in the prevention of such frauds, and the protection of its citizens.

· "A license may be required to sell a foreign article, when those of a domestic manufacture are sold without one ; and if the foreign article be injurious to the health or morals of the community, a state may, in the exercise of that great and conservative police power which lies at the foundation of its prosperity, prohibit the sale of it." *McLean*, J., in the *License Cases*.

Other judges in those cases expressed similar views, notably *Woodbury*, J., already referred to, who said, "It is perfectly competent for a state to assess a higher tax by way of license, &c., on articles of foreign rather than domestic growth belonging to her citizens, and it ever has been done."

BINGHAM, J.   The respondent claims that so much of *c.* 44, Laws of 1879, as amended by *c.* 72, Laws of 1881, as the information is based upon, is in conflict with art. 4, *s.* 2, of the Constitution of the United States, giving the citizens of each state all the privileges and immunities of citizens in the several states.

Section 1 of *c.* 44, as amended, enacts, among other things, that no party shall sell, or act as the agent or receive subscriptions for the sale of, trees, shrubs, or vines, not grown in this state, unless he shall first obtain a license for that purpose, under a penalty of one hundred dollars for each offence, with the proviso that any citizen of this state may sell trees, shrubs, and vines grown one year or more in lands or nurseries owned by him in this state, on which taxes have been paid, without procuring the license or incurring the penalty. The information is for selling trees, shrubs, and vines in New Hampshire not grown there, or grown one year or more in lands or nurseries owned by the respondent in the state, on which taxes have been paid.

These statutes do not give the citizens of other states the right to sell trees, shrubs, and vines grown one year or more in lands or nurseries owned by them in this state on which taxes have been paid, without a license, and they are not, in this respect, given the privileges and immunities of citizens of this state. This conflict avoids the statutory provisions on which the state asks to maintain this information.   Laws 1879, *c.* 44 ; Laws 1881, *c.* 72 ; *Ward* v. *Maryland*, 12 Wall. 418.

The case does not state the residence of the respondent, but it is assumed that it was in one of the other states of the Union. Still, if he was a citizen of this state, and the statute did not create a legal disability on citizens of other states, its effect being to discriminate against citizens of this state, a serious question arises, whether the legislature intended such a result, and if it did not, whether this provision of the statute has any legal effect.   *Bliss's Petition, ante* 135.

*Information quashed.*

CLARK, J., did not sit : the others concurred.