EGGEN v. CANADIAN NORTHERN RY. CO.

(Circuit Court of Appeals, Eighth Circuit. November 18, 1918.)

No. 5030.

1. LIMITATION OF ACTIONS ☞2(3)—STATUTE—CONSTRUCTION.
    Railway Act of Canada, c. 37, § 306, requiring personal injury suits to be brought within one year, is purely a statute of limitations, and so has no extraterritorial effect, and does not govern an action brought outside of Canada for injuries received therein, but such action is governed by the law of the forum.

2. CONSTITUTIONAL LAW ☞207(3)—EQUAL PRIVILEGES—LIMITATION STATUTE.
    Gen. St. Minn. 1913, § 7709, providing that, when a cause of action has arisen outside the state, and action thereon, under the laws of the place it arose, is barred by lapse of time, no such action shall be maintained in the state, unless plaintiff be a citizen of the state who has owned the cause of action since accrual, is invalid under Const. U. S. art. 4, § 2, as denying citizens of other states privileges and immunities.

    Hook, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Minnesota; Wilbur F. Booth, Judge.

Action by Gus Eggen against the Canadian Northern Railway Company. There was judgment for defendant, and plaintiff brings error. Reversed.

Ernest A. Michel, of Marshall, Minn. (Tom Davis, of Marshall, Minn., on the brief), for plaintiff in error.

H. Seger Slifer, of Minneapolis, Minn. (Hector Baxter, of Minneapolis, Minn., on the brief), for defendant in error.

Before HOOK, CARLAND, and STONE, Circuit Judges.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

STONE, Circuit Judge. Writ of error from directed verdict favoring defendant in a personal injury suit.

[1] The errors assigned present questions of law. Plaintiff, a citizen of South Dakota, was injured on a Canadian railway. Slightly more than a year later he brought this action in Minnesota. The first inquiry is as to whether the Canadian or the Minnesota statute of limitation governs. The Canadian statute (section 306, c. 37, of the Railway Act of Canada) which is here involved requires that suits such as this shall be brought within one year. This requirement is no part of the right to bring an action, but is purely a statute of limitation. Peszeniczny v. Canadian Northern Ry. Co., 35 Western Law Reporter, 546, 11 Western Weekly Reports, 546. Such character of statutes have no extraterritorial force. Therefore the Minnesota law, being that of the forum, governs.

[2] Two sections of the Minnesota statutes (Gen. St. Minn. 1913, §§ 7701, 7709) give rise to the final inquiry. Section 7701 is an ordinary statute of limitation of six years for personal injuries. Section 7709 is:

"When a cause of action has arisen outside of this state, and, by the laws of the place where it arose, an action thereon is there barred by lapse of time, no such action shall be maintained in this state unless the plaintiff be a citizen of the state who has owned the cause of action ever since it accrued."

The facts bring this case within section 7709, so that if that section is valid this action cannot be brought. Plaintiff challenges that section as being violative of section 2, art. 4, of the national Constitution, and of the Fourteenth Amendment thereto. It is necessary to discuss only the former. That provision is—

"The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."

It has been wisely seen that this provision of the Constitution is of comprehensive scope (Ward v. Maryland, 12 Wall. 418, 430, 20 L. Ed. 449; Conner v. Elliot, 18 How. 591, 593, 15 L. Ed. 497), and of deep influence in molding the Union into a compact nation (Blake v. McClung, 172 U. S. 239, 251, 19 Sup. Ct. 165, 43 L. Ed. 432; Paul v. Virginia, 8 Wall. 168, 180, 19 L. Ed. 357; Lemmon v. People, 20 N. Y. 607). Therefore the courts have prudently refrained from attempting any hard and fast definition of its terms (Ward v. Maryland, 12 Wall. 418, 430, 20 L. Ed. 449; Conner v. Elliot, 18 How. 591, 593, 15 L. Ed. 497; McCready v. Virginia, 94 U. S. 391, 395, 24 L. Ed. 248; Blake v. McClung, 172 U. S. 239, 248, 19 Sup. Ct. 165, 43 L. Ed. 432); but there is no divergence of opinion from the view expressed in Cole v. Cunningham, 133 U. S. 107, 113, 10 Sup. Ct. 269, 271 (33 L. Ed. 538) by Mr. Chief Justice Fuller, who said:

"The intention of section 2, art. 4, was to confer on the citizens of the several states a general citizenship, and to communicate all the privileges and immunities which the citizens of the same state would be entitled to under the like circumstances; and *this includes the right to institute actions.*" (Italics ours.)

Which view was emphasized by Mr. Justice Moody in Chambers v. B. & O. R. R. Co., 207 U. S. 142, 148, 149, 28 Sup. Ct. 34, 35 (52 L. Ed. 143) who said:

"The right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship, and must be allowed by each state to the citizens of all other states to the precise extent that it is allowed to its own citizens. Equality of treatment in this respect is not left to depend upon comity between the States, but is granted and protected by the federal Constitution. * * * Any law by which privileges to begin actions in the courts are given to its own citizens and withheld from the citizens of other states is void, because in conflict with the supreme law of the land." Ward v. Maryland, 12 Wall. 418, 430 (20 L. Ed. 449); McCready v. Virginia, 94 U. S. 391, 395, 24 L. Ed. 248; Blake v. McClung, 172 U. S. 239, 249, 19 Sup. Ct. 165, 43 L. Ed. 432; Harris v. Balk, 198 U. S. 215, 223, 25 Sup. Ct. 625, 49 L. Ed. 1023, 3 Ann. Cas. 1084; Corfield v. Coryell, 4 Wash. C. C. 371, 380, Fed. Cas. No. 3,230.

We regard section 7709 as opposed to this constitutional requirement, as it has been expounded in the above decisions, and therefore void.

Defendant seeks to draw a distinction between the right to bring a suit and the continuing right to bring it. A discrimination in the right to bring a suit five years after it accrues is as much a substantial discrimination as one in bringing the suit originally. Any difference is of degree, not of kind. The case of Chemung Canal Bank v. Lowery, 93 U. S. 72, 23 L. Ed. 806, is based upon no such distinction and employs no such reasoning. That case was decided upon the ground that there was an equitable and just ground for the discrimination in a limitation statute. For over 40 years this decision has been passed in silence by the Supreme Court without once being cited, that we can discover, upon this constitutional point. The later decisions above cited seem opposed to the spirit of that decision. They recognize and emphasize the great importance of this provision of the fundamental law, and the necessity of carefully preserving it from the slightest infringement. This statute, like many other state laws resulting in discrimination between citizens of different states, may have much to commend it, but such considerations have no place in constitutional tests, nor could they weigh against the paramount object of this constitutional provision, which aims at unified nationality as opposed to confederation.

The judgment is reversed.

HOOK, Circuit Judge (dissenting). It is well settled that holding a legislative act contrary to the Constitution should be avoided, if fairly possible. Even grave doubts should be resolved in favor of validity. United States v. Jin Fuey Moy, 241 U. S. 394, 401, 36 Sup. Ct. 658, 60 L. Ed. 1061. There is no clearly defined line between the power of the states and the limitations of the national Constitution, on one side or the other of which all cases readily fall; and in many instances legislation near the border has been upheld upon consideration of reasonableness in view of the conditions upon which it

operates. That course, while preserving the true essence of the Constitution, has imparted an elasticity essential to its permanence.

I do not think the Minnesota statute should be held repugnant to the Constitution. It proceeds upon the principle that in a general sense a liability, debt, or obligation is due at the domicile of the obligee and that he who owes it should go there to discharge it. Upon default it is not primarily the duty of the obligee to hunt his debtor beyond the boundaries of his state; he may await his coming within the jurisdiction of its courts. These are considerations in which an obligee domiciled in another state does not participate, and provisions of many state statutes of limitation proceed upon a recognition of them. It is not enough to say there is discrimination. Some difference in legislative treatment is warranted by a difference in conditions. The privileges and immunities contemplated by the Constitution are those which are of a fundamental character. In the field of legal remedies alone state legislation contains many discriminations in favor of both resident debtors and resident creditors which no one would now seriously contend are invalid. For examples, permitting attachment against a nonresident debtor without bond while requiring a bond in attachment against a resident; nonresidence, of itself without more, as a ground for attachment of the owner's property; the running of a statute of limitations in favor of a resident debtor, but not in favor of a nonresident one; requiring a bond of a nonresident creditor in bringing suit, but dispensing with it if he is a resident. Blake v. McClung, 172 U. S. 240, 256, 19 Sup. Ct. 165, 43 L. Ed. 432; Central Loan & Trust Co. v. Campbell, 173 U. S. 84, 19 Sup. Ct. 346, 43 L. Ed. 623 (Equal Protection Clause). In such cases residence or nonresidence may and generally does imply citizenship or the lack of it.

The right of access to courts of justice is of the greatest importance, but in preserving the equal privileges of the citizens in the several states in respect of it the Constitution does not pick up all local procedural details. The statute of Minnesota does not deny nonresidents the right to sue in its courts on causes of action arising elsewhere. It keeps its courts open to all as long as is allowed in the foreign jurisdiction where the cause of action arose, and then gives further time to those of Minnesota, and only those who have "owned the cause of action ever since it accrued."

None of the cases cited to overthrow the statute involved the question before us, and reliance is therefore placed on general language in the opinions. It has been held dangerous broadly to apply abstract definitions of the word "privileges," in the constitutional provision, to particular cases of legislation. Conner v. Elliot, 18 How. 591, 593, 15 L. Ed. 497. Perhaps the strongest of the quotations relied on is that from Chambers v. Railroad, 207 U. S. 142, 28 Sup. Ct. 34, 52 L. Ed. 143, but that case was not at all like the one here. It involved the constitutionality of an Ohio statute under which a right of action, created by the laws of another state in favor of the widow or personal representative of one whose death was caused by negligence, could be maintained in Ohio only when the deceased was an Ohio citizen, and the validity of the statute was sustained. The near-

est approach to the case at bar is Chemung Canal Bank v. Lowery, 93 U. S. 72, 23 L. Ed. 806. Like the case here, it involved the validity of a state statute of limitations under the "privileges and immunities" clause of the Constitution. Concisely expressed, the statute provided that if the plaintiff resided in the state the time should not run while defendant was out of the state, but that it should run if both plaintiff and defendant resided out of the state. In the consideration of the case residence was taken as synonymous with citizenship. It will be perceived that an exemption from the operation of the statute—from the running of the limitation—was accorded a resident creditor, but not accorded a nonresident creditor, under precisely the same condition, to wit, the nonresidence of the debtor. The discrimination was held reasonable and the statute was sustained. The precise point in that case does not appear to have again arisen in the Supreme Court, but in Anglo-Am. Prov. Co. v. Davis, 191 U. S. 373, 375, 24 Sup. Ct. 92, 48 L. Ed. 225, in which the validity of a New York statute was sustained under the "full faith and credit" clause, the court said: "As to discrimination against nonresidents, see Chemung Canal Bank v. Lowery, 93 U. S. 72 [23 L. Ed. 806]." In Penfield v. Railroad, 134 U. S. 351, 10 Sup. Ct. 566, 33 L. Ed. 940, a New York statute of limitations quite like the one here was construed, and held to bar a plaintiff who did not actually reside in the state. No point was made, however, upon its constitutionality.