

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

April 15, 1975

The Honorable Raymond W. Vowell
Commissioner
Department of Public Welfare
John H. Reagan Building
Austin, Texas 78701

Opinion No. H- 582

Re: Meaning of penal
statute concerning
importation of minors
for "placing out."
V. T. C. S., art. 695a,
secs. 6 and 7.

Dear Commissioner Vowell:

You have requested our opinion on the meaning of sections 6 and 7 of article 695a, V. T. C. S. This is a penal statute concerning the importation of a child into this state for the purpose of "placing him out or procuring his adoption." We find it unnecessary to address your specific questions for in our view sections 6 and 7 of article 695a, V. T. C. S., are clearly unconstitutional. These sections provide:

> Sec. 6. It shall be unlawful for any person, for himself or as agent or representative of another, to bring or send into this State any child below the age of sixteen (16) years for the purpose of placing him out or procuring his adoption without first having obtained the consent of the Department of Public Welfare. Said consent shall be given on a regular form to be prescribed by the Department of Public Welfare and no person shall bring any such child into this State without such permit and without having filed with the Department of Public Welfare a bond payable to the State, on a form to be prescribed by the Attorney General, and approved by the Department of Public Welfare, in the penal sum of One Thousand ($1,000.00) Dollars, conditioned that the person bringing or sending such child into this State will not send or bring any child who is incorrigible or unsound of mind or body; that he will remove any

such child who becomes a public charge or pay the expense of removal of such charge, who, in the opinion of the Department of Public Welfare, becomes a menace to the community prior to this adoption or becoming of legal age; that he will place the child under a written contract approved by the County Child Welfare Board and the Department of Public Welfare; and that the person with whom the child is placed shall be responsible for his proper care and training. Before any child shall be brought or sent into the State for the purpose of placing him in a foster home, the person so bringing or sending such child shall first notify the Department of Public Welfare of his intention and the Department of Public Welfare shall immediately notify the County Child Welfare Board, who shall make a report to the Department of Public Welfare on the person whom it is indicated will have charge of the child, and shall obtain from the Department of Public Welfare a Certificate stating that such home is, and such person or persons in charge, are in the opinion of the Department of Public Welfare, suitable to have charge of such child. Such notification shall state the name, age and description of the child, the name and address of the person to whom the same is to be placed, and such other information as may be required by the Department of Public Welfare, and the same shall be sworn to by such person. The Department of Public Welfare shall require the person sending said child into this State, or the person who is in charge of the same after he has been brought here, to make a report at certain stated times, and in the event such reports are not made, such Department of Public Welfare shall be authorized to deport said child from this State and the expenses thereof shall be recovered under said bond; provided, however, that nothing herein shall be deemed to prohibit a resident of this State from bringing into the State a relative or child for adoption into his own family. The Department of Public Welfare and Child Welfare Boards shall not allow minors to come into and be brought into this State in violation of this Act.

Sec. 7.   If any person shall bring into this State or direct, conspire, or cause to be brought into or sent into this State any child in violation of the foregoing section, he shall be guilty of a misdemeanor and upon conviction thereof shall be fined in a sum not less than Twenty-five ($25.00) Dollars nor more than One Thousand ($1,000.00) Dollars, or by confinement in the County Jail not exceeding twelve months, or by both such fine and imprisonment.

This Depression-era statute was enacted in 1931 as a part of the act creating the Division of Child Welfare in the Board of Control (later transferred to the Department of Public Welfare, art. 695e, V. T. C. S.). Acts 1931, 42nd Leg., ch. 194, §§ 6, 7 at pp. 324-325. Its purpose, as indicated by its title and emergency clause, was described in Attorney General Opinion O-2768 (1940) as follows:

By the passage of this Act, the Legislature sought to correct an existing evil; namely, the importation of defective, illegitimate, dependent, neglected or delinquent children into this State by irresponsible persons or agencies. More than frequently, these children became public charges and occasioned an overcrowded condition in our State Institutions.

We believe the statute seeks to achieve unconstitutional purposes. It attempts to deter the entry into this state of children who might become public charges.

The freedom to travel throughout the United States has long been recognized as a basic right under the Constitution. Passenger Cases, 7 How. 283 (U.S. 1849); Crandall v. Nevada, 6 Wall. 35 (U.S. 1868); Paul v. Virginia 8 Wall. 168 (U.S. 1869); Ward v. Maryland, 12 Wall. 418 (U.S. 1871); Slaughter-House Cases, 16 Wall. 36 (U.S. 1873); Twining v. New Jersey, 211 U.S. 78 (1908); Edwards v. California, 314 U.S. 160 (1941).

A California statute making it a crime to transport non-resident indigents into the state was struck down as unconstitutional in Edwards v. California, 314 U.S. 160 (1941).

In Shapiro v. Thompson, 394 U.S. 618 (1969), the United States Supreme Court held unconstitutional state statutory provisions which imposed durational residence requirements on welfare benefits. In that case the Court said:

> [T]he purpose of inhibiting migration by needy persons into the State is constitutionally impermissible. 394 U.S. 618, 629 (1969).

The Supreme Court reemphasized its holding in Shapiro v. Thompson, supra, in Memorial Hospital v. Maricopa County, 415 U.S. 250, 94 S.Ct. 1076 (1974), stating:

> . . . to the extent the purpose of the requirement is to inhibit the immigration of indigents generally, that goal is constitutionally impermissible. . . . 94 S.Ct. 1076, at 1085.

The right of interstate travel being a "basic constitutional freedom," the Court in Maricopa County required a compelling state interest to support a durational residency requirement for receipt of medical benefits. The requirement was viewed as having a sufficient impact upon the right to travel to necessitate strict scrutiny.

While none of these cases have dealt with a minor's right to travel, we believe that minors do have such a right, at least when they travel with the permission of the person who is responsible for them. We reach this conclusion in light of several United States Supreme Court decisions which have extended such fundamental rights to minors. Tinker v. Des Moines Independent Community School District, 393 U.S. 503 (1969); In re Gault, 387 U.S. 1 (1967); West Virginia State Board of Education v. Barnette, 319 U.S. 624 (1943).

Since article 695a, sections 6 and 7, attempt to prohibit entry into the State by some minors and inhibit entry by many, in our opinion the statute infringes on their right to travel and must be supported by a compelling state interest. As previously noted, the purpose of the statute is constitutionally impermissible and it cannot be considered such an interest. In our view, sections 6 and 7 of article 695a are unconstitutional.

Due to the statute's unconstitutionality as an infringement on the right to travel, we find it unnecessary to address its possible unconstitutionality under several other doctrines. See, e.g., Harper v. Virginia Board of Elections, 383 U.S. 663 (1966); Robinson v. California, 370 U.S. 660 (1962); Toomer v. Witsell, 334 U.S. 385 (1948).

By holding this statute unconstitutional, we do not imply that the state is without power to regulate the placement of children brought into this state for that purpose. Without specifying how a statute might be drawn to avoid constitutional problems, it is simply our opinion that this particular statute is unconstitutional.

## SUMMARY

Sections 6 and 7 of article 695a, V.T.C.S., are unconstitutional as impermissible infringements on the right to travel.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee