## THE H. ROUW COMPANY v. THE TEXAS CITRUS COMMISSION

No. A-3248. Decided January 30, 1952.
Rehearing overruled April 9, 1952.
(247 S. W., 2d Series, 231.)

*Sid L. Harding,* of Edinburg, *Archer & Archer* and *L. Hamilton Lowe,* all of Austin, for appellant, H. Rouw Company.

On the contention that the law is unconstitutional appellants cite Waples v. Marrast, 108 Texas 5, 184 S.W. 180; Terrell v. Middleton, 187 S.W. 367; Davis v. City of Taylor, 123 Texas 39, 67 S.W. 2d 1033; also annotation, 112 A.L.R. 576.

*Price Daniel,* Attorney General, *Dean J. Capp* and *Clinton Foshee,* Assistants Attorney General, for Appellee, Texas Citrus Commission.

To support the constitutionality of the law and uphold the

validity of the order of the trial court, appellee cites Floyd Fruit Co. v. Florida Citrus Com., 128 Fla., 565, 175 So. 248, 112 A.L.R. 563; Savings & Loan Ass'n. v. Topeka, 20 Wall 655; Tom Green County v. Moody 116 Texas 299, 289 S.W. 381.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This is a direct appeal from the 92nd District Court of Hidalgo County, Texas, under the provisions of Article 1738a, Vernon's Texas Civil Statutes, and Rule 499a, Texas Rules of Civil Procedure. Appellee, as plaintiff below, instituted this suit against appellant, an Arkansas corporation, having a permit to do business in Texas. Parties will be styled as they were in the court below. It was alleged, among other things, that defendant had failed to give the bond required by certain provisions of House Bill 29, Chap. 93, Acts., Reg. Ses., 51st Leg., 1949, (and found as Article 118d of Vernon's Texas Civil Statutes), in order that defendant might conduct his business in dealing in citrus fruits. The plaintiff also sought an injunction to prohibit defendant carrying on his business in citrus fruits, until a bond was given. Defendant answered attacking the constitutionality of the above Act upon the grounds hereinafter noted, and its requirement that defendant execute the bond. The cause was heard in the trial court upon stipulated facts as shown in the transcript before us, and after hearing, the trial court granted the temporary injunction as prayed for by the plaintiff. Defendant has duly perfected his appeal to this court.

Article 118d, in general terms, creates the Texas Citrus Commission, and prescribes the qualifications, appointment, powers and duties thereof, and authorizes the Commission to levy a tax upon the persons, firms, associations and corporations therein provided of not exceeding 3c per standard box, or bag of 1 3/5 bushels, upon all citrus fruit grown in the State of Texas and packed or placed in containers and marketed, or processed and sold between September first of each year and August 31st of the following year; and provided that if any citrus fruit is placed in containers or packed or processed between the above dates in any years, but not sold until after the next September first, it shall be taxed upon such sale at the rate fixed by the Commission on or before the September first preceding the sale and authorizes the levy of an appropriate tax on other qualities of citrus fruit.

The Act provides that the tax money collected should be deposited in three named funds: (1) Texas Citrus Commission

Fund, (2) Agricultural and Mechanical College of Texas-Weslaco Experiment Station No. 15 Citrus Fund, and (3) Texas College of Arts and Industries Citrus Fund, and further that "the proceeds of such taxes in said funds shall be appropriated by the Legislature of the State of Texas for the purposes herein named and for no other purpose * * * to be used by said respective institutions in education and research for the purpose of increasing knowledge with respect to Texas citrus fruits and by-products, and protecting Texas citrus fruits from pests and diseases and of finding new uses for Texas citrus fruits and by-products and of improving the quality and yield of such fruit and by-products."

The Commission is given the "power to investigate or cause to be investigated, and to otherwise inform itself from time to time as to economic and market conditions affecting citrus fruit, including the present and prospective supply, demand and price for the various varieties, grades and sizes and other pertinent factors affecting the marketing thereof", and to hold hearings and take testimony as to all of the above factors. Among the powers given to the Commission is the power to conduct publicity and sales campaigns designed to increase the consumption of Texas citrus fruits and by-products, and to expend not more than one-half of the revenues of the Commission in any one year for such purpose; to carry on research to increase knowledge of Texas citrus fruits and by-products and of improving the quality and yield of such fruits and by-products and the protection of such fruits from pests and disease. Also it is directed that "the Commission may by rule and regulation prescribe safeguards to prevent citrus fruit packed or placed in containers from entering commercial fresh fruit channels of trade contrary to the provisions of the rules and regulations of the Commission." The Commission is made a public municipal corporation of Texas with power to sue and be sued, contract and be contracted with and possesses such other powers as may be necessary to carry out its duties imposed on it by law. Power is given to all persons aggrieved by any order, etc. to have a hearing before the Commission, and then appeal to the appropriate court. The Commission is given power by rules and regulations to establish minimum grades or sizes (limited, however, by another provision that no restrictions shall be placed upon packing or placing in containers of citrus fruit grading equal to or better than "Texas Select" grade, as now or hereafter officially adopted in Texas, and providing the sizes of such "Texas Select", or better, conform to the requirements of the Commis-

sion in effect at the time such citrus fruit is packed or placed in containers), or both, and the several varieties and kinds thereof, which may be packed or placed in containers during any specified period or periods, for transportation and sale as fresh fruit. The powers of the Commission "shall be exercised in such a manner as to stabilize the market and insure as near as may be, orderly marketing of fresh citrus fruit at prices which will represent a fair return to the producers thereof. If it should be determined that there is a conflict of this section and the anti-trust laws of Texas, then in such event the anti-trust laws will prevail."

An exemption is provided to "any natural person as to citrus fruit grown in Texas on land owned by such person and packed and sold by such person as fresh fruit or as to such fruit so grown on such land and processed and sold by such person." The Act further provides that "each person, firm and corporation (including co-operatives organized under the co-operative marketing laws of Texas) who is or may be engaged in buying or selling or processing or packing or placing in containers or otherwise dealing in any fresh citrus fruit or citrus fruit by-products upon which any tax authorized by this Act is or may become due, shall before engaging in any such activity, give bond to the Texas Citrus Commission in the sum of at least Two Thousand Dollars ($2,000) conditioned upon the prompt payment of all taxes and interest due or to become due under the terms and provisions hereof, at the time and place and in the manner prescribed by law and by rules and regulations which may be from time to time promulgated by said Commission." The Act contains the usual severability clause. The legislative purpose in enacting the Act is set out as follows:

"This Act is passed for the purpose of preventing economic waste of food and loss of property and natural resources of this State and to encourage and foster the development of a major industry, the Texas citrus industry by fostering research as to new uses; by preventing destruction thereof by pests and diseases and by improving the quality of and stimulating demand for, such Texas citrus fruit and by-products produced therefrom. Lack of such fostering care for such industry has in the past and will in the future (unless prevented) result in unnecessary and avoidable waste of an important resource of this State. Such loss and waste will imperil the ability of producers of Texas citrus fruit to contribute in appropriate amounts to the support of ordinary governmental and educational functions, and increase the tax burdens of other citizens for the same pur-

poses. Hence this Act is passed to further the public welfare and general prosperity of the State of Texas."

The emergency clause recites that the public necessity and welfare of Texas require the protection of the Texas citrus industry from great waste and loss. In general terms, the above are the main provisions of the Act affecting this cause.

The defendant below, and by assignments here, claim the Act is unconstitutional because it violates the following constitutional requirements and prohibitions: (1) the tax levied is not levied for a public purpose as is required by Section 3, Article I; Section 48, Article III; Section 3, Article VIII; Section 6, Article XVI of the Texas Constitution, and Section 1, Article XIV of the United States Constitution; (2) the tax levied is not equal and uniform as required by Sections 1 and 2 of Article VIII of the Texas Constitution, and Section 2, Article IV and Section 1, Article XIV of the United States Constitution; (3) the Act is an attempt to delegate the taxing power, vested exclusively in the Legislature, to the Commission in violation of Section 1, Article III of the Constitution of Texas; (4) the Act is an attempt to authorize the levy and collection of an occupation tax without providing that one-fourth (1/4) of the revenues therefrom shall be set apart annually for the benefit of the public free schools of Texas; (5) the Act is an undue burden upon interstate commerce in violation of Clause 3, Section 8, Article I and Clause 2 of Section 10, Article I of the Constitution of the United States; (6) the Act takes the defendant's property without adequate compensation and due process of law in violation of Section 17, Article I of the Texas Constitution and Section 1 of Article XIV of the United States Constitution; and (7) the Act violates the anti-trust acts of both Texas and the United States.

We have reached the conclusion that point (2) must be sustained, and this being true, we do not pass upon the other assignments made by the defendant.

1  To avoid the provisions of Section 1, Article VIII of the Texas Constitution that all "taxation shall be equal and uniform", and Section 2 of the same article that "all occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax", the Commission claims the tax in question is only a regulatory or license tax levied under the general police power of the State.

There has been much written upon the difference between a license tax, and an occupation tax. The leading case in Texas is Texas Company v. Stephens, 100 Texas 628, 103 SW 481 (1907) by Justice Williams. This court, in very clear and compelling language, laid down the rule for determining the distinction in the case of Hurt v. Cooper, 130 Texas 433, 110 SW 2d 896, (1) as follows:

"It is sometimes difficult to determine whether a given statute should be classed as a regulatory measure or as a tax measure. The principle of distinction generally recognized is that when, from a consideration of the statute as a whole, the primary purpose of the fees provided therein is the raising of revenue, then such fees are in fact occupation taxes, and this regardless of the name by which they are designated. On the other hand, if its primary purpose appears to be that of regulation, then the fees levied are license fees and not taxes. Hoefling v. City of San Antonio, 85 Tex. 228, 20 S. W. 85, 16 L. R. A. 608; Brown v. City of Galveston, 97 Tex. 1, 75 S. W. 488; City of Fort Worth v. Gulf Refining Co., 125 Tex. 512, 83 S. W. 2d 610; Royall v. Virginia, 116 U. S. 572, 577, 6 S. Ct. 510, 29 L. Ed. 735; Dayton-Goose Creek Ry. Co. v. United States (D. C.) 287 F. 728; Texas Co. v. Brown (D. C.) 266 F. 577, 37 C. J. p. 168, Section 6."

2, 3 Applying the above rule to the Act under consideration we find the tax levied to be an occupation tax. A reading of the Act clearly demonstrates that its primary purpose is to raise revenue, and not a regulation of the citrus fruit industry under the police power. Laudable as the purpose of the Act may be; viz., to advertise and enlarge the markets for Texas citrus fruit and its by-products, and for research beneficial to the citrus industry, the primary purpose being the raising of revenues in excess of the amount needed for regulation of the industry to carry out the above provisions, under the well established rules of law, the tax levied must of necessity be classed as an occupation tax. Being an occupation tax, it therefore comes within the plain requirements of the first sentence of Section 2, Article VIII of the Texas Constitution—that it be "equal and uniform upon the same class of subjects within the limits of the authority levying the tax." The Act (Sec. 14, Art. 118d, first paragraph) taxes "firms, associations and corporations" carrying on the business defined, but specifically, in the last paragraph of the same Section 14, exempts from the tax "any natural person" who engages in the same identical business. This violates not only the above quoted part of the Texas Constitution, but also Section 1 of Article VIII of our State Constitution, and in addi-

tion, Section 1 of the 14th Amendment to the Constitution of the United States. Hoefling v. City of San Antonio, 85 Texas 228, 20 SW 85, 16 L. R. A. 608; Texas Co. v. Stephens, 100 Texas 628, 103 SW 481; Pullman Palace Car Co. v. State, 64 Texas 274, 53 Am. Rep. 758; State v. Pioneer Oil & Refining Co., Texas Com. App., 292 SW 869; Davis v. White, Texas Civ. App., 260 SW 138, writ refused; Lossing v. Hughes, Texas Civ. App., 244 SW 556, no writ history; Power Manufacturing Company v. Saunders, 274 U. S. 490, 71 L. Ed. 1165, 47 Sup. Ct. 678; Ward v. Maryland, 12 Wall. 418, 79 U. S. 418, 20 L. Ed. 449; Southern Railway Company v. Greene, 216 U. S. 400, 30 Sup. Ct. 287, 54 L. Ed. 536; Wheeling Steel Corp. v. Glander, 337 U. S. 562, 69 Sup. Ct. 1291, 93 L. Ed. 1544, 51 Am. Jur 222, Secs. 167-169.

We have read the cases of Floyd Fruit Co. v. Florida Citrus Commission, 128 Fla. 565, 175 So. 248, 112 A. L. R. 562; Louisiana State Department of Agriculture v. Sibilee, 207 La. 877, 22 So. 2d 202; Miller v. Michigan State Apple Commission, 296 Mich. 248, 296 NW 245; state et rel Graham v. Enking, 59 Ilaho 321, 82 Pac. 2 649, cited by plaintiffs as sustaining the Act. In each of these cases it was decided that the respective tax levied was an excise, or privilege tax, as distinguished from a property tax. There it was stated that the constitutional requirement that taxes be equal and uniform did not apply. In Texas, the Constitution requires that all occupation taxes—even though they are one diversion of excise taxes as distinguished from property taxes—be equal and uniform. Also, in none of the four cases cited did we find the provision exempting natural persons engaged in the business taxed from the tax levied on corporations similarly engaged.

An opinion of the Attorney General, dated October 5, 1949 and No. V-922, upholding the validity of the Act, is cited to us as an authority for sustaining the Act. While we have the greatest respect for the opinions of the State's legal officer and adviser, a reading of this opinion shows that it specifically passed upon the questions of (1) whether or not the tax levied by the Act was for a public purpose and (2) whether or not the Act delegated the Legislature's exclusive taxing power contrary to our Constitution. The last paragraph of the body of the opinion, and immediately preceding the summary, states:

"We refrain from passing upon the nature of the tax as concerning its distribution and also as concerning its collection

from the grower. Those questions have not been asked and are not covered by this opinion."

One of these is the identical question upon which we have passed, and have held the Act unconstitutional.

The judgment of the trial court is reversed and judgment here rendered dissolving the injunction heretofore granted.

Opinion delivered January 30, 1952.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

ON REHEARING

On original submission all parties briefed and argued the case on the premise that unless the tax levied were a license, or privilege tax, as distinguished from a revenue-raising measure, (which all parties called an occupation tax), the tax in question violated the constitutional requirements that it must be equal and uniform. The appellee in its brief never quoted or referred to Sec. 1 of Art. VIII of our State Constitution for any purpose whatsoever. On the contrary, in its brief, the appellee took the position that the tax was not an occupation tax, as follows:

"* * * Appellant cites many cases which hold that an occupation tax must be equal and uniform and some of these cases specifically hold that an occupation tax cannot be levied against a corporation without at the same time being levied against an individual engaging in the same occupation. However, the tax in question is not an occupation tax, as discussed in our Fourth Counter Point, and the cases cited by Appellant are not applicable. The requirements of equality and uniformity apply only to general revenue raising taxes and not to regulatory taxes under the police power. * * *"

4 In its motion for rehearing appellee, for the first time, contends that even if the tax be held to be an occupation tax, it is valid within that part of Sec. 1 of Art. VIII of the State Constitution, which reads as follows: "* * * except that persons engaged in mechanical and agricultural pursuits shall never be required to pay an occupation tax; * * *" The present tax is not a tax levied upon persons engaged in "agricultural pursuits" within the meaning of the above quoted phrase from the Constitution. As is said in the amicus curiae brief supporting appellee's position "the tax is levied upon the activity of packing or

placing in containers and marketing or processing and selling citrus fruit grown in Texas. (It is stipulated that only the packing and marketing applies to this defendant). The tax is exacted of any person, engaged in any vocation whatever, who performs these acts, whether he be commercial packer, gift fruit shipper, canner or citrus or bottler of lemon juice, processor of frozen orange juices, marmalade manufacturer, or whatever."

The motion for rehearing is overruled.

Opinion delivered April 9, 1952.