

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

October 11, 1972

Honorable Preston Smith
Governor of Texas
State Capitol Building
Austin, Texas 78711

Dear Governor Smith:

Opinion No. M- 1232

Re: Whether the Ft. Worth
City Ordinance conflicts
with the State Constitu-
tion or statutes in its
provisions for the
regulation and licensing
of bail bondsmen in the
city municipal courts,
and related questions?

You have requested an opinion of the Attorney General of
Texas in reference to the following questions:

"1.  Does the Fort Worth City Ordinance
conflict with the Constitution and statutes
of the State in a manner that would render
the ordinance void in its entirety or in
any part or parts because of inconsistency
as prohibited by Article XI, Section 5
of the State Constitution and Article 1165,
V.A.T.C.S.?

2.  Does the Fort Worth City Ordinance
provide additions to the Constitution and
statutes of the State in a manner that
would render the ordinance void in its
entirety or in any part or parts because
of inconsistency as prohibited by Article
XI, Section 5 of the State Constitution
and Article 1165, V.A.T.C.S.?

> 3. Does the Fort Worth City Ordinance
> in any manner whatsoever violate the Constitution or statutes of the State?
>
> 4. Does the Fort Worth City Ordinance
> in any manner whatsoever violate the Constitution of the United States?"

This proposed ordinance submitted with your request would be an amendment to Chapter 12 of the Fort Worth City Code (1964) by adding Sections 12-16 through 12-32. It is designed to regulate the entities which serve as sureties for compensation on bail bonds in the municipal courts of the City of Fort Worth. Under this ordinance the City of Fort Worth, which is a home rule city, will create a licensing commission to process applications by such sureties, pursuant to the criteria named in Section 12-21 of the ordinance. Exceptions to the license requirement are enumerated in Section 12-18, which categories comply with Articles 17.01 through 17.38, Vernon's Code of Criminal Procedure. A one hundred dollar annual license fee is required by this ordinance (Section 12-29), and certain conduct is prohibited (Section 12-32). A penal provision (SECTION 4) provides for a fine not to exceed two hundred dollars for violation of the ordinance. Our opinion is that the ordinance is a regulatory measure, and that the hundred dollar fee does not appear to be an unreasonable annual license fee as a matter of law. Our opinion is that there is no conflict between this ordinance and state or federal law which would invalidate any portion of the ordinance.

Questions 1 through 3 may be analyzed together.

Article XI, Section 5, of the Texas Constitution concerning cities with a population in excess of five thousand, requires that

> ". . . no charter or any ordinance passed under
> said charter shall contain any provision
> inconsistent with the Constitution of the
> State, or of the general laws enacted by
> the Legislature of this State; . . ."

A similar prohibition is contained in Article 1165, Vernon's Civil Statutes.

The Texas Constitution, Article I, Section 11, provides in part that, "All prisoners shall be bailable by sufficient sureties, . . ." Rules for the posting of bail bonds are set out by the Texas Code of Criminal Procedure, Articles 17.01 through 17.38, Vernon's Code of Criminal Procedure.

Article VIII, Section 1 of the Texas Constitution states that:

> ". . .[The Legislature] may also impose occupation taxes, both upon natural persons and upon corporations, other than municipal. doing any business in this State. . . . provided . . . that the occupations tax levied by any county, city or town for any year on persons or corporations pursuing any profession or business, shall not exceed one-half of the tax levied by the State for the same period on such profession or business."

It is clear that under Article 1165, and Texas Constitution Article XI, Section 5, a home rule city cannot enact rules and regulations contrary to the Constitution and the general law. City of Austin v. Clendennen, 323 S.W.2d 158, (Tex.Civ.App., 1959, error ref. n.r.e.). Nevertheless, a home rule city such as Fort Worth can exercise any power not denied it by the Constitution or general statutes. Interstate Circuit, Inc. v. City of Dallas, 247 F.Supp. 906 (N.D.Tex. 1965), affirmed 366 F.2d 590 (5th Cir. 1965).

In order to determine if there is a conflict between the ordinance and any statutory or constitutional provision, it is important to bear in mind that we should look to legislative acts not for grants of power to a city but only for limitations on the power available to cities. Forwood v. City of Taylor, 147 Tex. 161, 214 S.W.2d 282 (1948). This position is further stated in State v. City of La Porte, 386 S.W.2d 782 (Tex.Sup. 1965):

> ". . . The governing body of a city is not required to look to the Legislature for a grant of power to act. Such power is given by the Constitution. The governing body only looks to acts of the Legislature to ascertain if it has placed any limitations on the power

> to act as granted by Article XI, Section 5.
> See Forwood v. City of Taylor, 147 Tex. 161,
> 214 S.W.2d 282 (1948); Yellow Cab Transit Co.,
> Inc. v. Tuck et al., Tex.Civ.App. (1938), 115
> S.W.2d 455, wr. ref.; City of Houston v. City
> of Magnolia Park, 115 Tex. 101, 276 S.W. 685
> (1925). . . ." (at p. 785).

This doctrine is supported by the Supreme Court's decision in
City of Sweetwater v. Geron, 380 S.W.2d 550, 552 (Tex.Sup. 1964),
where the Court notes a presumption in favor of a city's ability
to enact ordinances unless there is a clear indication by the
Legislature to the contrary. The Court said:

> " . . . Although the broad powers granted to
> home rule cities by the Constitution, Article XI,
> Section 5, Vernon's Ann. St., may be limited by
> acts of the Legislature, it seems that should the
> Legislature decide to exercise that authority, its
> intention to do so should appear with unmistakable
> clarity."

In view of this reasoning there is no apparant conflict or
any consistency between the ordinance in question and Articles
17.01 through 17.38 of Vernon's Code of Criminal Procedure, Arti-
cle XI, Section 5 of the Texas Constitution or Article 1165. The
same holds true regarding Article I, Section 11 of the Texas
Constitution as there is no indication that this ordinance will
interfere with the sufficiency of sureties.

Another aspect of this question however, concerns an occu-
pation tax question. In addition to Article VIII, Section 1
of the Constitution, supra, Article 1.09, Title 122A, Taxation-
General, Vernon's Civil Statutes, reads:

> "No city, county, or other political
> subdivision may levy an occupation tax levied
> by this Act unless specifically permitted to
> do so by the Legislature of the State of
> Texas."

Although the labels are often interchanged by various commenta-
tors, the Texas Supreme Court has consistently defined the dif-
ference between occupation taxes and licenses. Whereas occupa-
tion taxes, when authorized by the Legislature, are used primarily

to raise revenue, the primary purpose of a license must be that of regulation, and it must be reasonable and not arbitrary. Hurt v. Cooper, 130 Tex. 433, 110 S.W.2d 896 (1937); H. Rouw Co. v. Texas Citrus Commission, 151 Tex. 182, 247 S.W.2d 231 (1952). In complying with Article 1.09, supra, the Legislature has authorized very few occupation taxes.[1] Our opinion is that this license fee is a reasonable regulatory matter which in no manner conflicts with any statutory provisions concerning occupation taxes.

There is relatively little federal law concerning the subject of this ordinance with which the city's action might encounter conflict. See Title 6, United States Code. The United States Constitution contains nothing directly on this point other than the Eighth Amendment, which would not conflict with this ordinance. The United States Supreme Court has long indicated that the individual states would retain power to regulate corporations acting as sureties within those states. Fidelity and Deposit Company of Maryland v. Commonwealth of Pennsylvania, 240 U.S. 319, 36 S.Ct. 298 (1916). As indicated by Interstate Circuit, Inc., supra, the federal courts do recognize the Texas constitutional and statutory provisions in this area. Therefore, in our opinion the Fort Worth City ordinance does not violate the Constitution of the United States in any manner.

## SUMMARY

The Fort Worth City ordinance does not conflict with nor provide additions to the Constitution and statutes of the State in a manner that would render the ordinance void in its entirety or in any part or parts because of any inconsistency as provided by Article XI, Section 5 of the State Constitution and Article 1165, Vernon's Civil Statutes. Further,

---

[1]The Legislature has authorized occupation taxes in Title 122 A, Taxation-General, Vernon's Civil Statutes, on coin operated machines (Sections 13.02, 13.14); dealers in pistols (Section 19.01 (7)); and operators of billiard tables (Section 19.01(10)). This also applies to certain liquor permittees (Article 666-15a(1), V.P.C.) and certain beer licensees (Article 667-3(h), V.P.C.).

this ordinance in no manner violates the Constitution or statutes of the State of Texas nor the Constitution of the United States.

Respectfully submitted,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by E. Bruce Curry
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

John Banks
Gordon Cass
Bill Campbell
Sam Jones

SAMUEL D. McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant