

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-24-00405-CV

---

City of El Paso, Texas, Appellant

v.

Joseph C. Pickett, Appellee

---

On Appeal from the 384th District Court
El Paso County, Texas
Trial Court No. 2020DCV3514

---

## OPINION

This case is a dispute over the legality of a fee charged by the City of El Paso's Environmental Services Department to its residential customers. Appellee, Joseph C. Pickett asserted, and the trial court agreed, that the City did not have the authority to charge the fee and that it was an illegal tax. The City appeals the trial court's declaratory and monetary judgment in favor of Pickett. For the reasons below, we affirm.

# I. BACKGROUND

The Environmental Services Department (ESD) of the City of El Paso provides solid waste disposal services to the residents of El Paso.[1]

For its weekly residential trash pick-up and its bi-weekly recycling pick-up, the ESD charges what is called the "grey trash bin" fee, which is currently $19 per month. It also charges an "environmental fee" of $5 per month which funds environmental nuisance abatement projects such as graffiti removal and vector control. Those charges are not at issue in this appeal.

## A. Adoption of franchise fee

In 2014, the El Paso City Council passed a budget resolution authorizing the ESD "to charge a franchise fee in the amount determined by the City Council for the wear and tear on the City's right[s]-of-way due to the use of City sanitation vehicles engaged in the collection, transportation and disposal [of] municipal solid waste to an authorized municipal solid waste facility." For the fiscal years 2015 to 2018, the City Council set the environmental franchise fee (EFF) at $1.10 per month per residence. This amount was based on 5% of the ESD's operational revenue for projects related to solid waste disposal divided by the number of customers. The EFF of $1.10 per month generated approximately $2.5 million per year.

In 2018, the City adopted an ordinance codifying the 2014 budget resolution. El Paso, Tex., Code of Ordinances No. 18829 (2018). The ordinance amended the El Paso City Code to allow the ESD:

> to charge the established fee as a related cost to providing the solid waste disposal utility [] due to the wear and tear on the city's rights-of-way caused by the use of the city sanitation vehicles in providing the utility service, and that the reasonable return generated by the franchise fee be transferred to the city general fund to be appropriated by the city council as deemed appropriate.

---

[1] The ESD also provides numerous other services "relating to areas of environmental concerns" such as operating the City's landfills, providing vector control services, monitoring air quality, graffiti removal, street sweeping, and maintaining medians. El Paso, Tex., Code of Ordinances, ch. 9.04, § 9.04.010 (2021).

El Paso, Tex., Code of Ordinances, ch. 9.04, § 9.04.530E (2018).

In 2019, the City raised the EFF from $1.10 per month to $4.00 per month per residence. It claims that the fee was increased after consideration of a study published in 1960 that compared the impact of different vehicles on a road. According to the study, multi-axle, heavy vehicles like the ESD garbage trucks have almost 9,000 times the impact on a road than the average sedan.

After the 2019 fee increase, the fee generated annual revenue of $8.9 million. The City's Budget Resolution for that year stated that "$7,000,000 of the [EFF] will be used for residential street maintenance to include all related equipment and materials." The remaining $1.9 million was placed into the City's general fund.

The next year, 2020, the City raised the fee again, this time from $4.00 to $6.00 per month per residence. The City did not conduct another study or analysis before increasing the fee. At the new rate, ESD collected between $13.1 million and $13.7 million in fees for years 2020 to 2023. The City's budget resolution for 2020 allocated $6.6 million of the collected fees for residential street maintenance and $4 million for Fire Department vehicles and major capital equipment for the Police Department. The budget resolutions for years 2021 to 2023 do not make specific allocations, but only state that "[EFF] will be used to support the General Fund expenditures of the Streets and Maintenance department."

**B. Pickett's lawsuit**

Pickett, an El Paso resident who was being charged the monthly franchise fee, filed the underlying suit in October 2020. He sought a declaratory judgment that the EFF was an impermissible tax, constituted an unlawful taking, and violated the Texas Constitution, the Health

3

& Safety Code, and the City's own ordinances.[2] He also sought actual damages, attorney's fees, costs, and interest.

After a bench trial, the trial court granted judgment for Pickett. The trial court entered findings of fact and conclusions of law as follows:

- The EFF "is unreasonable, excessive, and/or intended to raise revenue making it a tax[.]"
- "The [EFF] constitutes an impermissible tax, is an unconstitutional taking, and/or is not authorized by law. The ordinance is invalid as written and has not been followed by [the City]."

The final judgment contained the following additional findings:

- Pickett rebutted the presumption that the ordinance was valid and the City failed to "provide a valid legal justification" for the EFF.
- The EFF is a tax because it was intended to and did raise "unrestricted funds for general use[.]"
- Franchise fees can only be charged to public utilities and the ESD is not a public utility because it is an internal branch of the City.
- In the alternative, "the City exceeded any lawful authority it may possess, both in the imposition of the EFF and in the administration of EFF funds."
- The unlawful tax, or in the alternative, unreasonable fee was an unconstitutional taking of Pickett's property.
- Pickett paid the EFF under protest.

The declaratory judgment awarded a refund to Pickett of the fees he paid, attorney's fees in the amount of $33,107.82 and an additional $37,500 if the City appealed.

C.  **Issues on appeal**

The City asserts six issues on appeal. In Issue One, the City argues that the EFF is valid because it has inherent and statutory authority to charge it. In Issue Two, it contends that the EFF is not a tax. In Issue Three, the City contends that it had the authority to spend the money raised by the EFF in the manner that it did. Issue Four challenges the trial court's subject matter

---

[2] This case was also the subject of an interlocutory appeal in which we affirmed the trial court's denial of the City's plea to the jurisdiction. *City of El Paso v. Pickett*, 662 S.W.3d 592 (Tex. App.—El Paso 2022, no pet.).

jurisdiction to award a refund of the fees that Pickett paid. Issues Five and Six challenge the award of attorney's fees and argue that the case should be remanded to determine if Pickett should be ordered to pay the City's attorney's fees.

## II. ANALYSIS

### A. Fee v. tax (Issue Two)

The City, as a home-rule municipality, has the "full power of local self-government." Tex. Loc. Gov't Code § 51.072; *see also City of Laredo v. Laredo Merchants Ass'n*, 550 S.W.3d 586, 592–93 (Tex. 2018). The broad authority of home-rule cities is limited only by the Texas Constitution's prohibition on charters or ordinances "inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." Tex. Const. art. XI, § 5; *Dallas Merch.'s & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490 (Tex. 1993). One such limitation is that a home-rule city can tax its residents only as "authorized by law or their charters."[3] Tex. Const. art. XI, § 5; *Anderson v. City of San Antonio*, 67 S.W.2d 1036, 1036 (Tex. 1934). Even when a City has authority to charge a fee, it cannot charge a fee that is in actuality an impermissible tax. *Lowenberg v. City of Dallas*, 261 S.W.3d 54, 58 (Tex. 2008) (per curiam). We therefore begin with the City's second issue.

### B. Standard of review

Legislation, such as a city ordinance, is presumed to be valid and the person challenging the legislation has the burden to rebut that presumption. *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 792–93 (Tex. 1982). The validity of an ordinance—specifically, whether it conflicts with the constitution or a statute—is a matter of law. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998). The City argues that because the issue is one of law, the trial court's findings of fact

---

[3] Even for allowable taxes, the amount a home-rule city may collect is limited to 2½ percent of the city's taxable property. Tex. Const. art. XI, § 5.

are immaterial to our review. However, as discussed below, the determination of whether fees are taxes turns on whether the fee is related to the service provided and whether it exceeds the amount that is reasonably necessary; those are questions of fact. *El Paso Apartment Ass'n v. City of El Paso*, 415 F. App'x 574, 580–81 (5th Cir. 2011) (per curiam); *City of Houston v. Harris Cnty. Outdoor Advert. Ass'n*, 879 S.W.2d 322, 326–27 (Tex. App.—Houston [14th Dist.] 1994, writ denied). We review the trial court's findings of fact for legal and factual sufficiency and its conclusions of law de novo. *City of Houston*, 879 S.W.2d at 327.

In a legal sufficiency review of a finding on which the appellant did not have the burden of proof, we must affirm a judgment unless (1) there is "a complete absence of evidence of a vital fact," (2) "the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact," (3) there is "no more than a mere scintilla" of evidence proving a vital fact; or (4) the evidence conclusively establishes the opposite proposition of a plaintiff's proffered vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In reviewing the evidence, we "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* at 827. In a factual sufficiency review, we "consider and weigh all of the evidence, and will set aside the verdict only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.* at 826.

## C. Primary purpose test

The trial court found that the EFF is "unreasonable, excessive, and/or intended to raise revenue, making it a tax[.]" The City argues that courts cannot review the amount of the fee because that is a policy decision for City Council to make. At oral argument, the City stated that if the residents of El Paso believe that City Council is imposing unreasonably high fees, their remedy is the ballot box. But the nature of a charge (whether it is an authorized fee or an impermissible tax) is not a policy decision but a question of law that courts are often called on to make. *See, e.g.*,

6

*Lowenberg*, 261 S.W.3d at 58 (determining that a fire safety registration fee was actually a tax); *Texas Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 462 (Tex. 1997) (holding that assessments charged by the Foundation were proper regulatory fees and not occupational taxes).

In making the determination of whether a fee is a tax, the focus is on the amount of the fee relative to the City's costs. Courts evaluate whether a fee is an impermissible tax by determining its primary purpose. *See, e.g.*, *H. Rouw Co. v. Texas Citrus Comm'n*, 247 S.W.2d 231, 234 (Tex. 1952); *Producers Ass'n of San Antonio v. City of San Antonio,* 326 S.W.2d 222, 224 (Tex. App.—San Antonio 1959, writ ref'd n.r.e.); *City of Houston*, 879 S.W.2d at 326. If the primary purpose of a charge is regulation based on a city's police powers, it is not a tax. *H. Rouw Co.*, 247 S.W.2d at 234. If, instead, the primary purpose is to raise revenue, the fee is actually a tax. *Boll Weevil*, 952 S.W.2d at 461. However, because even permissible fees are intended to raise revenue, "[t]he critical issue is whether the assessment is intended to raise revenue *in excess* of that reasonably needed for regulation." *Id.*; *City of Fort Worth v. Gulf Ref. Co.*, 83 S.W.2d 610, 618 (Tex. 1935) (The fee "cannot be excessive nor more than reasonably necessary to cover the costs of granting the license and exercising proper police regulation; or, as stated in another way, the sum levied should bear some reasonable relationship to the legitimate object of the licensing ordinances"); *see also Producers Ass'n*, 326 S.W.2d at 224.

The City first argues that the EFF is not a "regulatory" fee and so cannot be evaluated by the primary purpose test. In the alternative, the City claims that the fee is not excessive.

(1) *Regulatory fees*

Regulatory fees are "imposed against persons in an industry . . . in an amount reasonably necessary to fund the . . . regulation of that industry[.]" 952 S.W.2d at 461. Most of the cases in which the primary purpose test is used involve challenges to fees that are charged to people in

specific industries. *See, e.g.*, *Boll Weevil*, 952 S.W.2d at 456–57 (fee assessed on cotton growers for the operation of the boll weevil eradication program); *Lowenberg*, 261 S.W.3d at 56 (fee charged to owners of commercial buildings for fire protection); *City of Fort Worth*, 83 S.W.2d at 611 (fee charged to gas station owners). The City reasons that since the EFF "do[es] not fund the regulation of the industry" but instead "compensate[s] a municipality for the use of its rights of way[,]" it is not a regulatory fee and the primary purpose test does not apply.

Courts have employed the primary purpose test to determine if a charge is a fee or a tax even when the charge is not levied against individuals in a particular industry or typically thought of as regulatory fees.[4] For example, in *Gatesco Q.M. Ltd. v. City of Houston*, like in this case, a utility customer challenged fees as being taxes. 503 S.W.3d 607, 611 (Tex. App.—Houston [14th Dist.] 2016, no pet.). In that case, the fee at issue was a charge for the late payment of a water bill. *Id.* Even though the fee was not charged to or in relation to particular businesses, the Fourteenth Court of Appeals used the primary purpose test to analyze whether the late fees were regulatory charges or taxes. *Id.* at 616. Similarly, in *El Paso Apartment Ass'n v. City of El Paso*, 415 F. App'x 574, 581 (5th Cir. 2011), owners and managers of apartment complexes in El Paso filed suit asserting that stormwater drainage fees were unlawful occupation taxes. *Id.* at 577. The court noted that "[t]he stormwater drainage fees at issue do not fit neatly into the category of a license or regulatory fee, but the cases involving challenges to these sorts of fees are instructive" in analyzing fees exercised pursuant to the city's police power. *Id.* at 581. The court in that case used the primary purpose test and compared the City's cost in providing stormwater drainage services to the amount collected from the fees to determine that it was not a tax. *Id.*

We therefore use the primary purpose test to assess if the EFF is an impermissible tax.

---

[4] In addition, similar to the primary purpose test, in challenges to the rates charged by a municipally-owned utility, courts must determine if the rates are reasonable and related to the City's expenses in providing the services. *San Antonio Indep. Sch. Dist. v. City of San Antonio*, 550 S.W.2d 262, 265 (Tex. 1976); *Black v. City of Killeen*, 78 S.W.3d 686, 695 (Tex. App.—Austin 2002, pet. denied).

(2)  *Excessive amount of the fee*

The City maintains that for Pickett to meet his burden, he had to show that the total amount of the fees collected is more than the City's costs in repairing and maintaining its streets. The $6 per month fee generates over $13 million annually. This is only a fraction of what the City spends each year on street repair and maintenance—which ranges between $38.5 million and $47.8 million. However, when determining whether the EFF is excessive, the relevant factor is the City's cost attributable to repairing damage caused by ESD's garbage trucks, not the total cost for *all* street repairs and maintenance.[5] The City currently has 94 franchise agreements with different utility companies. If it were allowed to charge each of them up to the amount of its entire budget for street repair, it would result in a major windfall.[6]

Pickett presented evidence that the City did not attempt to isolate the street damage caused by ESD's garbage trucks when calculating the EFF.[7] When the City first adopted a budget resolution allowing for the EFF, it was set at a percentage the ESD's revenue. Even though the City no longer uses that method to determine the amount of the EFF, we note that a fee based on revenue is likely to fail the primary purpose test because it does not "bear some reasonable relationship to the legitimate object of the [] ordinance." *City of Fort Worth*, 83 S.W.2d at 618. The

---

[5] Other States reviewing similar fees distinguish between the costs to the city caused by the utility and those it would have incurred anyway. For example, in *Kragnes v. City of Des Moines*, the Iowa Supreme Court examined a franchise fee charged to a utility intended to cover the cost of maintaining the city streets. *Kragnes v. City of Des Moines*, 810 N.W.2d 492 (Iowa 2012). The court held that "the cost of maintaining the right-of-way that would be incurred whether or not the utilities were present" could not be included in the fee. *Id.* at 507; *see also Jacks v. City of Santa Barbara*, 397 P.3d 210, 213 (Cal. 2017) (holding that the government did not need voter approval to charge for the use of its property, but "the amount of the charge must bear a reasonable relationship to the value of the property interest").

[6] As it is, the City collects a total of $60.8 annually in franchise fees from various utilities, all presumably for the use of its rights of way, much more than what it spends in street repair.

[7] Pickett further argues that *any* fee to fund street repairs is not reasonably related to solid waste disposal because the expenditures for those repairs are made by a different City department. However, in setting a fee, "it is proper to take into consideration . . . all the incidental consequences to which the city may be subjected[.]" *City of Fort Worth v. Gulf Ref. Co.*, 83 S.W.2d 610, 619 (Tex. 1935); *Black*, 78 S.W.3d at 694 (approving of tap fees that not only cover the direct costs but also the City's cost of "updating, improving, and maintaining its utility system"). One incidental consequence of providing solid waste disposal services is damage to the city streets, regardless of which department of the City pays for those repairs.

stated object of the ordinance in this case is "the wear and tear on the City's rights-of-way caused by the use of the City sanitation vehicles in providing the utility service[.]" A fee based on a percentage of ESD's revenue, however, has nothing to do with the City's expenses in repairing street damages caused by the garbage trucks. *Builder Recovery Services, LLC v. Town of Westlake*, 650 S.W.3d 499, 505–06 (Tex. 2022).

The City attempted to explain how the increased EFF was related to the City's expenses. Catherine Nicole Cote, the City's managing director of the office of management and budget, testified that the City increased the fee to $4.00 based on studies comparing the damage done to roads by different vehicles. According to the formulas provided in those studies, an ESD garbage truck does nearly 9,000 times the amount of damage as a sedan. However, that data cannot by itself support the fee increase. Without other information, like how many cars and other heavy, multi-axle vehicles travel the city streets each day, it is not possible to isolate the amount of damage done by ESD vehicles from the damage done from other vehicles. What's more, the City did not do an analysis before deciding to increase the fee again to $6 per month. Although Cote testified that an analysis was not needed because $6 "was well within the range of a reasonable fee," she also testified that she believed that any amount approved by the City Council was reasonable.[8]

Pickett presented evidence that, despite the ordinance's statement of the fee's purpose, the City actually intended the fee to cover expenses unrelated to solid waste disposal. When the fee was set at $4 per month and generated almost $9 million a year, only $7 million of that was allocated to street repair. Nearly $2 million was placed into the general fund and could be spent on any City expense regardless of its relation to solid waste disposal. The increase to $6 per residence

---

[8]
Q.    So, you said $4.00 is reasonable and then $6.00. Is $8.00 reasonable, too?
A.    If city council approves it, yes, ma'am, it's well within the range of the fee.
Q.    $12.00, $20.00, whatever city council approves?
A.    It would be city council's approval.

per month generated an additional $4 million in revenue and Cote's testimony indicated that the increase was intended to fund the purchase of vehicles and equipment for the fire and police department.[9]

Evidence that the calculation of the fee was arbitrary and was increased so that the City had the funds to buy equipment for the fire and police departments was legally and factually sufficient to support the trial court's findings that the EFF is excessive and therefore a tax. The City's second issue is overruled. Because we hold that the fee is an impermissible tax, we need not decide if and under what authority the City could charge a hypothetical fee that is related to solid waste disposal and not excessive (Issue One), or whether the City lawfully used the funds raised by the tax (Issue Three).

### D. Jurisdiction to award refund (Issue Four)

The trial court found that Pickett paid the fees under protest and it awarded damages in the amount of fees he had paid from the filing of the lawsuit until the date of judgment. The City argues that the trial court lacked jurisdiction to award these damages. The City's sole basis for its argument is that the fee was valid and not a taking of Pickett's property. But, as we have held, the fee was actually an impermissible tax.

Although not discussed by the parties, we recognize that governmental immunity limits a litigant's right to a refund of money paid.[10] "Political subdivisions of the state, including cities,

---

[9]
    Q.    Is it a coincidence that city council . . . decides to raise the fee without any new studies from $4.00 to $6.00 to an amount that equals $4,000,000, and [in] that same year uses that amount for things that have nothing to do with wear and tear on the streets?

    A.    Those items are funded by the general fund, yes, ma'am.

    Q.    Okay. It's not a coincidence, is it, Ms. Cote?

    A.    No, ma'am.

[10] The City has not raised immunity in defense of a claim for reimbursement either in the interlocutory appeal or this appeal. However, because immunity implicates subject matter jurisdiction, we can address it for the first time on appeal even if not raised by a party. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012); *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013).

share in Texas' inherent sovereign immunity." *Garcia v. City of Willis*, 593 S.W.3d 201, 208 (Tex. 2019). To "protect[] the government from 'threats to . . . financial security that can arise from unpredictable revenue shortfalls' and to 'support[] the age-old policies of discouraging litigation with the government[,]'" governmental units are immune from suits requesting the repayment of money, including unlawful taxes, that were voluntarily paid. *Lowenberg*, 261 S.W.3d at 58 (quoting *Dallas County Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 876–77 (Tex. 2005)). However, there is "a narrow exception to immunity when a plaintiff seeks reimbursement of an allegedly unlawful tax, fee, or penalty that was paid involuntarily and under duress." *Garcia*, 593 S.W.3d at 209. The duress requirement is "pivotal." *Id*. "[D]uress is established where the unauthorized tax or fee is required, necessary, or shall be paid to avoid the government's ability to charge penalties or halt a person from earning a livelihood or operating a business." *Bolton*, 185 S.W.3d at 879 (internal quotation marks omitted).

The ordinance allowing the ESD to charge the fee also makes violation of the Ordinance a misdemeanor punished by a fine up to $2,000. El Paso, Tex., Code of Ordinances No. 18829 (2018); El Paso, Tex., Code of Ordinances, ch. 9.04, § 9.04.010 (2021). Payment of an unlawful tax is coerced and made under duress if nonpayment is criminal, even if the payer was not cited for the criminal violation. *Lowenberg*, 261 S.W.3d at 59 (holding that the duress element was satisfied and noting that "payment was coerced not by the citation but by the Ordinance itself, which made nonpayment criminal"). Because Pickett faced criminal penalties if he refused to pay the fee, he paid it under duress as a matter of law, and the City is not immune to damages in the form of a refund. *See id.* (providing, as a matter of law, that payment of fees based on a municipal ordinance that imposes criminal consequences for failure to pay was not voluntary, and refund was not barred).

The City's fourth issue is overruled.

### E.   Attorney's fees (Issues Five and Six)

In a declaratory action, a trial court "may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code § 37.009. The City contends that the trial court's award of attorney's fees to Pickett was error because there was no finding or evidence to support such a finding that an award of fees was equitable and just.[11] It requests that we reverse the award and remand the case to determine if fees should be awarded to it.

"[T]he equitable and just requirements are questions of law for the trial court to decide." *Armstrong v. Hixon*, 206 S.W.3d 175, 183 (Tex. App.—Corpus Christi 2006, pet. denied) (citing *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 161 (Tex. 2004)). By awarding attorney's fees, the trial court concluded that it was equitable and just to do so. The City argues a lack of evidence, but the equitable and just element "is not susceptible to direct proof but instead is a matter of fairness in light of all the circumstances." *Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 522 S.W.3d 471, 494 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). The finding that fees are equitable and just is a discretionary one that will not be reversed unless the trial court abused its discretion and reasonable minds could not differ. *Save Our Springs All., Inc. v. Lazy Nine Mun. Util. Dist. ex rel. Bd. of Directors*, 198 S.W.3d 300, 319 (Tex. App.—Texarkana 2006, pet. denied).

As Pickett argues, "[t]his case touches on a matter of significant public concern." It involves a substantial amount of money charged by the City, but little incentive to individual residents to take legal action challenging the City's action. The trial court could reasonably decide

---

[11] The requirements that attorneys' fees be "reasonable and necessary" and "equitable and just" are distinct requirements. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (describing the equitable and just requirements as additional to the reasonable and necessary requirements). The factfinder determines the *amount* of attorneys' fees that are reasonable and necessary, but a court still has discretion as a matter of law to determine whether awarding all or any of those fees is equitable and just under the circumstances. *Ridge Oil Co. v. Guinn Investments, Inc.*, 148 S.W.3d 143, 161–63 (Tex. 2004). The City does not challenge the reasonableness or necessity of the *amount* of the fees nor does it challenge the conditional appellate fees awarded.

that an award of fees was equitable and just so that Pickett would not have to bear the brunt of litigating an issue affecting all residents. We overrule the City's fifth and sixth issue.

## III. CONCLUSION

The judgment of the trial court is affirmed.


                                        MARIA SALAS MENDOZA, Chief Justice

June 9, 2026

Before Salas Mendoza, C.J., Palafox, J., and Chew, C.J. (Senior Judge)
Chew, C.J. (Senior Judge) sitting by assignment
Chew, C.J. (Senior Judge), concurring